Mr. R. H. CROSBY and Mrs. V. Ethel Crosby (Mrs. V. Ethel Crosby, as Executrix of the Estate of R. H. Crosby, substituted in the place and stead of R. H. Crosby, Deceased), Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 73-2928.

United States Court of Appeals, Fifth Circuit.

July 5, 1974.

---

Robert E. Hauberg, U. S. Atty., Joseph E. Brown, Jr., Asst. U. S. Atty., Jackson, Miss., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Jack D. Warren, Bennet N. Hollander, Louis A. Bradbury, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Floyd J. Logan, Gulfport, Miss., for plaintiffs-appellees.

Before COLEMAN, CLARK and GEE, Circuit Judges.

CLARK, Circuit Judge:

Did expenditures by a family corporation allegedly made for the personal benefit of the chairman of the board of directors and his wife constitute constructive dividend income to them?[1] The district court's answer was in the negative. Finding a portion of that answer tainted by its erroneous construction of a deed instrument which establishes the legal relationship between these parties, we vacate and remand in part and, in part, affirm.

### I.

Crosby Chemicals, Inc. (the corporation) was founded by taxpayer, R. H. Crosby, and is engaged in the production of industrial chemicals from forest products, with plants in Picayune, Mississippi and DeRidder, Louisiana. During 1965 and 1966, the taxable years in question, all of its stock was owned by the taxpayers, other family members, trusts created for the benefit of family members and charitable organizations controlled by family members, and taxpayer served as chairman of a board of directors which was composed entirely

---

1. Taxpayers are R. H. Crosby and wife, V. Ethel Crosby, who, for the years in question, filed a joint return. When used in this opinion in the singular, "taxpayer" will refer only to R. H. Crosby. Mr. Crosby is now deceased.

of family members. Additionally, all corporate offices were family members.

In 1937 the taxpayers purchased for approximately 36,000 dollars a one-story antebellum residence in Picayune, and an estate of 222 surrounding acres. The estate included a golf course, tennis court, and many other pleasant appurtenances. After their purchase the taxpayers reversed a process of deterioration which had begun on the property by making such improvements as landscaping, restoration of the golf course, conversion of the tennis court into a swimming pool, and the addition of a basement to the house. In 1944 for 38,100 dollars, the taxpayers executed a deed which purported to convey the house and surrounding acreage to the corporation,[2] but contained the following reservation:

> "Grantors reserve unto themselves, or the survivor of them, or unto the heirs at law of the grantors, the full, complete, unqualified right to the exclusive use, occupancy and possession of the property herein described and hereby conveyed, so long as said property is owned or held by the grantee herein named."

Not only did the "deed" thus reserve the exclusive use of the estate it initially stated was conveyed, but it also placed the following limitation on the corporation's other actions regarding any rights it might exercise in the property it had "acquired":

> "This conveyance and deed is made on the condition that the grantee is not to sell, convey or mortgage, or in any way or to any extent encumber the property herein described and hereby conveyed until said property has first been offered to grantors, or the survi-

vor of the grantors, or the heirs at law of the grantors, at the price not to be in excess of the then value of said property as shown and disclosed by the books of the grantee."

After this conveyance the taxpayers continued to live in the house.[3] Subsequently, between 1953 and 1955, the corporation purchased from parties other than taxpayers 275.9 additional acres that were contiguous to the 222 acre estate. In this same period the corporation spent 660,553 dollars for improvements to both properties. The amount of these expenditures was entered in and depreciated on the corporation's books. Of this amount some 147,770 dollars was spent on improving the main house. Substantial sums were spent for the construction of a greenhouse, barbecue house, pool house and the remodeling of the guest house on the original 222 acres. Additionally, the corporation paid for extensive landscaping, including a sprinkling system, walkways and gardens.

In 1965 and 1966 the corporation bought 6,188.19 and 2,900.46 dollars worth of flowers and gardening supplies for the land surrounding the residence and expensed these items currently. In both of these years, while taxpayers were living in the residence, the corporation paid their electricity bill, gas bill, telephone bill and the salary of a part-time cook.

The Commissioner determined that taxpayers had received as constructive dividend income in the 1965 and 1966 taxable years, the fair rental value of the residence, the total amount of the 1965 and 1966 gardening expenditures, the utility bills,[4] and the cook's salary.[5]

---

2. The name of the corporation at that time was Crosby Naval Stores, Inc.

3. The only exception to this continuous occupation occurred in 1957 when the taxpayers moved to New Orleans for a period of about two years.

4. The Commissioner considered the full amount of the electricity and gas bills to be constructive dividends, but determined that

only one-half of the telephone bill should be so considered.

5. The Commissioner also challenged certain charitable contribution deductions by the taxpayers and sought to tax the Crosbys with income from sales of the corporation's stock by a controlled charity to a trust created for the benefit of taxpayers' grandchildren. The district court's decision in favor of the taxpayers on these issues was not ap-

After paying the assessed deficiency, taxpayers brought this suit for refund of the amount paid. The district court held that since the taxpayers had reserved a "life estate in themselves and their heirs" in the property, they received no constructive dividend income from being able to live on it rent free in 1965 and 1966. Alternatively the court held that in the event taxpayers' retained interest in the property was invalid, its rental value was excludable from taxpayer's income under Section 119 of the Internal Revenue Code [6] as lodging furnished for the convenience of taxpayer's employer, the corporation.[7] The utility bills were also excludable under Section 119 as a part of this lodging. Finally, the court held that there was no constructive dividend due from the corporation's 1965 and 1966 gardening expenditures or from the services of the parttime cook since these payments resulted in no personal economic benefit to taxpayers.

## II.

■ Section 61(a) of the Internal Revenue Code includes dividends in gross income. Section 316(a) defines a dividend as any distribution of property by a corporation to its shareholders out of post-1913 earnings and profits or earnings and profits of the taxable year.[8] In accord with this broad definition, a taxpayer can be charged with disguised or constructive dividend income even though the corporation has not observed the formalities of dividend declaration, and has not made a pro rata distribution to the entire class of stockholders, and even though neither the corporation nor the shareholder intended a dividend and the corporation did not record the distribution as a dividend for bookkeeping purposes. See Paramount-Richards Theatres v. Commissioner of Internal Revenue, 153 F.2d 602 (5th Cir. 1946); United States v. Smith, 418 F.2d 589, 593 (5th Cir. 1969); and Gibbs v. Tomlinson, 362 F.2d 394, 397 (5th Cir. 1966). In filling the interstices of Section 316's definition for constructive dividends, this circuit has held: "the crucial concept in finding a constructive dividend is that the corporation conferred an economic benefit on the stockholder without the expectation of repayment." Gibbs v. Tomlinson, *supra*, 362 F.2d at 397; United States v. Smith, *supra*. In the instant case our concern is exclusively with the question of economic benefit. Not every corporate expenditure incidentally conferring economic benefit on a shareholder is a constructive dividend. See B. Bittker & J. Eustis, Federal Income Taxation of Corporations and Shareholders [Bittker and Eustis] ¶ 7.05, at 7–27 (3d ed. 1972).

pealed by the Commissioner. Additionally, the government sought to include as constructive dividend income the salary of a chauffeur and the use of a Cadillac automobile. Taxpayers do not appeal the district court's ruling in favor of the government on these latter issues.

6. 26 U.S.C. § 119 provides:
  § 119. *Meals or lodging furnished for the convenience of the employer*
  There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him by his employer for the convenience of the employer, but only if—
    (1) in the case of meals, the meals are furnished on the business premises of the employer, or
    (2) in the case of lodging, the employee is required to accept such lodging on the business premises of his employer as a condition of his employment.
  In determining whether meals or lodging are furnished for the convenience of the employer, the provisions of an employment contract or of a State statute fixing terms of employment shall not be determinative of whether the meals or lodging are intended as compensation.

7. The district court found that "the policy of the Board of Directors of Crosby Chemicals, Inc. and the nature of the manufacturing process used by the company required that plaintiff, R. H. Crosby, Sr., be constantly and immediately available for duty at the plant site at all times."

8. The taxpayers have not argued that the corporation's earnings and profits in this period were insufficient to cover any of the alleged constructive dividends.

Of determinative significance is whether the "distribution was *primarily* for shareholder benefit." Sammons v. Commissioner of Internal Revenue, 472 F.2d 449 (5th Cir. 1972). The line between primarily for shareholder benefit and primarily for corporate benefit is often a difficult one to draw, *see* Bittker and Eustis, *supra*, ¶ 7.05 at 7–27, varying with the myriad circumstances which different transactions may present; *see* Hardin v. United States, 461 F.2d 865 (5th Cir. 1972).

### III.

At the threshold of deciding the case *sub judice*, we must establish what interests were created by the 1944 conveyance. The starting point of the district court's decision was the assumption that it created corporate ownership of the property subject to the retained life estate of taxpayers-grantors and their heirs. Our disagreement creates such a fundamental difference that all else takes on secondary importance on the present review.

██ The basic tenet of tax law requires that the 1944 conveyance be given a substance-over-form practical construction—"it is the underlying essence of a transaction that determines its taxability"; International Trading Co. v. Commissioner of Internal Revenue, 275 F.2d 578, 583 (7th Cir. 1960). *See also, e. g.,* American National Bank of Austin v. United States, 421 F.2d 442, 452 (5th Cir. 1970), citing United States v. Snyder Brothers Co., 367 F.2d 980, 982–983 (5th Cir. 1966), cert. denied, 386 U.S. 956, 87 S.Ct. 1021, 18 L.Ed.2d 104 (1967). Moreover, the district court's treatment of this deed transaction for tax purposes is not a factual determination reviewable only under the clearly erroneous standard of Fed.R.Civ.P. 52(a). That court's characterization of the 1944 instrument was based solely on

its construction of the effect of the deed for tax purposes. *See* Illinois Central Railroad Co. v. Gulf, Mobile & Ohio Railroad Co., 308 F.2d 374 (5th Cir. 1962); and 9 Wright & Miller, Federal Practice & Procedure, ¶ 2588.

An analysis of the entire conveyance discloses that the only property right which the corporation obtained was a limited right to sell the property. During the lifetimes of the taxpayers and their heirs, they retained "the full, complete, unqualified right to the exclusive use, occupancy and possession of the property." The corporation could not even mortgage the property without first offering to sell it to taxpayers. The corporation's tenuous "remainder" interest would only vest upon the death of all of taxpayers' heirs at law. The only right of any significant value which the corporation acquired was the ability to seek a prospective purchaser and, if successful, to then tender the property first to the taxpayers or their heirs at its present depreciated book value.[9] The result of the 1944 conveyance was such that in practical effect ownership of the property remained in the taxpayer-grantors, except for the very restricted right vested in the corporation to recoup the book value of its "purchase" and any sums spent on improvements.

### IV.

██ The district court's alternative application of Section 119 to the 1953 through 1955 improvements is limited to the contingency that the taxpayers' retained interest was somehow destroyed, and the corporation in fact became the outright owner of the property.[10] Under our construction of the deed this contingency is completely negated. In addition, when taxpayers' substantial ownership is recognized, the essential requirement of Section 119, that the lodging be furnished "by the employer," dis-

---

9. Even the strength of this corporate right is mitigated by the fact that the corporation was controlled by family members.

10. The Commissioner had argued that the extensive improvements to the property so changed its nature that the taxpayers' "life estate" was defeated. *See infra*, part VI.

appears. The district court's opinion also indicates that the utilities furnished by the corporation are excludable under Section 119 as an inseparable part of lodging furnished by the corporation. Exclusion of these items however should have been dependent upon the subsequent invalidity of the taxpayers' retained interest. Since we have held that the retained interest was indeed effective and, in fact, the equivalent of ownership, these items similarly are not excludable under Section 119.

## V.

The taxpayers' burden in a refund suit in the district court is to prove not only that the Commissioner erred in his determination of tax liability but also to establish the correct amount of the refund due. *See, e. g.,* Helvering v. Taylor, 293 U.S. 507, 55 S. Ct. 287, 79 L.Ed. 623 (1935), and Bar L Ranch, Inc. v. Phinney, 426 F.2d 995 (5th Cir. 1970). Thus, if insufficient evidence is adduced upon which to determine the amount of refund due, the Commissioner's determination of the amount of tax liability is regarded as correct.

Though the taxpayers retained substantially all the ownership rights in this property, the amount of the dividend constructed must be limited to the fair rental value of the improvements which were made primarily for shareholder benefit. The corporation did acquire the right to recover its book value of the property and improvements from taxpayers or in lieu of such payment, to sell the property to a third person. When the deed is thus construed, it becomes apparent that the taxpayers must have received constructive dividend income in the amount of the fair rental

value of such of the 1953–55 improvements as were intended and used primarily for their personal benefit. *See* Sammons v. Commissioner of Internal Revenue, *supra.* To ascertain the amount of such dividend, a determination of which of the 1953–55 improvements were primarily intended and used for corporate profit-making purposes and which were primarily intended and used for taxpayers' personal benefit is required. *See, e. g.,* International Trading Co. v. Commissioner of Internal Revenue, 275 F.2d 578, 587 (7th Cir. 1960); United Aniline Co. v. Commissioner of Internal Revenue, 316 F.2d 701 (1st Cir. 1963), and International Artist, Ltd. v. Comm'r, 55 T.C. 94 (1970). Improvements having a corporate purpose might include those which were primarily made to facilitate the entertainment of corporate customers and to have a place in which to hold corporate meetings.[11] Additionally, expenditures on the outlying 275.9 acres owned outright by the corporation would be legitimate expenses to enhance the value of a corporate investment and of only incidental benefit to taxpayers.

## VI.

Based upon the assumption that the deed created ownership in the corporation and a life estate in taxpayers, the government argued below that the improvements in 1953–55 changed "the residence to such a degree that it cannot fairly be said that the residence in which the plaintiffs resided in 1966 was one and the same residence as that [in which they had] reserved the right to live in for the rest of their lives." Therefore, it urged that the rent free use of the property was an economic benefit and taxpayers were chargeable with constructive dividend income for

---

11. There is no room to argue that, notwithstanding the inapplicability of Section 119, these improvements were made primarily for the corporate purpose of keeping the taxpayer near the plant and available for duty. In view of taxpayers' preemptive purchase option, neither do we think that it can be soundly argued that these improvements

were for the corporate purpose of enhancing its salability. Moreover, these improvements were in the nature of residential improvements and if the Picayune market is as limited as taxpayers urge, there would seem to be a strong likelihood no buyer could be found who would pay for them.

the full fair rental value of the property. On this appeal, the government now argues that there is an effective "life estate" as to the residence sans improvements but urges that the measure of the constructive dividend is the fair rental value of the improvements, as they are not subject to the retained interest and were gratuitously furnished by the corporation for taxpayers' personal benefit.

The taxpayers argue that the government is bound by its theory below, and urge us not to consider its reconstructed appellate position, or not to apply the usual burden of proof rule. Additionally, they argue that the testimony of their expert witness, a qualified appraiser of Picayune real estate, shows that these costly improvements did not increase the fair rental value of the property, and thus, in any event, no economic benefit was realized by taxpayers from such improvements.[12]

In his primary holding the district judge did no more than reject the government's argument that the 1953–55 improvements had the effect of eliminating the taxpayers' retained interest. The taxpayers argue that since there is testimony in the record indicating that these improvements did not increase the fair rental value of the property, we should decide the issue now. However, in view of the inconsistency between the government's position below and on this appeal, and the trial court's erroneous construction of the property interest created by the deed, the cause must be remanded so that further evidence may be adduced upon which to base an allocation. On remand, the burden will be on taxpayers to prove which improvements were for a corporate purpose and which were not.

■ Furthermore, since Section 119 is inapplicable here, the district court should allocate the utility bills between the portion which was spent primarily for taxpayers' personal benefit and the portion which was spent primarily for corporate benefit. To the extent that there is an implicit finding in the district court's opinion that the taxpayers received no personal economic benefit from payment of all of their utility bills, we hold that finding to be clearly erroneous. An allocation should be made, and that part of the utility bills which was paid by the corporation primarily for the personal benefit of taxpayers must be treated as constructive dividend income. In the absence of evidence upon which to base an allocation, the total amount assessed by the commissioner must be so treated.

■ As to the 1965–66 gardening expenditures, the district court should reconsider its holding that the taxpayers "received no economic benefit" from these expenditures in light of our determination that taxpayers, in effect, remained the owners of the 222 acre plot. The entire amount of such gardening expenditures as were made on the 222 acres in which the taxpayers retained exclusive use and which were currently expensed on the corporation's books, would be constructive dividend income to the taxpayers. *See* Greenspon v. Commissioner of Internal Revenue, 229 F.2d 947 (8th Cir. 1956). If the evidence is insufficient to permit a reliable allocation, the government's determination of the amount of dividend is due to be accorded correctness.

■ Finally, the district court's determination that "the salary paid Alice Wells (the cook), was an expenditure by the corporation for a valid corporate purpose from which plaintiffs received no personal economic benefit" is a finding untainted by our construction of the deed. We cannot say it is clearly erroneous and it is affirmed.

Vacated and remanded in part, affirmed in part.

---

12. The district court found that the fair rental value of the entire property was 250 dollars per month, based on testimony of taxpayers' witness. This was the only evidence as to rental value in the record. Such proof is a two-edged sword. While denigrating the market value of what taxpayers "received", the overall economic impracticality of these large expenditures reinforces the likelihood that the corporation's purpose was primarily to confer an economic benefit upon taxpayers from the corporate coffer.