* Consolidated with; Slappey Drive Industrial Park, Civ. 1084; Lake Park, Inc., Civ. 1101; Sherwood Acres, Inc., Civ. 1103; Forest Estates, Inc., Civ. 1111; Lake Park Additions, Inc., Civ. 1139; Pecan Haven, Inc., Civ. 1141; Emily Jean Haley, Civ. 1085; John W. and Katherine S. H. Crouch, Civ. 1100; Spencer C. Walden, Jr., Civ. 1102; Loretta Haley McKnight, Civ. 1112; and William T. Haley v. U. S., Civ. 1113.

**CAIRO DEVELOPERS, INC.**

**v.**

**UNITED STATES of America.***
**Civ. A. No. 915.**

United States District Court,
M. D. Georgia,
Albany Div.

Aug. 1, 1974.

H. H. Perry, Jr., Perry, Walters, Lippitt & Custer, Albany, Ga., for plaintiffs.

Ronald T. Knight, U. S. Atty., M.D. Ga., Macon, Ga., Lawrence R. Jones, Jr., Myron C. Baum, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

OWENS, District Judge:

### I. *Introduction*

The court has before it a series of twelve related tax refund suits involving seven corporate taxpayers and five individual taxpayers. For every issue in the individual cases, a similar issue exists in a corporate case, and the parties have stipulated that the resolution of issues in the corporate cases shall be controlling with respect to the individual taxpayers.

The parties have executed lengthy stipulations which delineate the underlying facts in each corporate case, and those facts are hereby incorporated as part of the court's findings. In order to facilitate the comprehension of the issues herein involved, certain stipulated facts will be restated. The court has considered all of the stipulated facts as well as the depositions, interrogatories, and exhibits on file, and the facts as herein stated are not to be construed as constituting the sole factual basis for the court's conclusions of law.

The dominant issue in each of the corporate cases is the appropriate characterization to be made with respect to transfers of land[1] and advances of

---

1. The transfers involving land were:
   (1) Joel T. Haley, Jr., Cornelia H. Walden, and Loretta Haley to Lake Park, Inc. (1954);
   (2) Joel T. Haley, Jr., Cornelia H. Walden and Loretta Haley to Sherwood Acres, Inc. (1954);
   (3) Cornelia H. Walden, Loretta Haley, Katherine S. Haley and Emily Jean and William T. Haley through their guardian to Sherwood Acres, Inc. (1960);
   (4) Cornelia H. Walden, Loretta Haley, Katherine S. Haley and Emily Jean and William T. Haley through their guardian to Lake Park Additions, Inc. (1959);
   (5) Loretta Haley and Marjorie H. Scherberger to Forest Estates, Inc. (1959);
   (6) Spencer C. Walden, Jr. to Pecan Haven, Inc. (1960);
   (7) Cornelia H. Walden to Slappey Drive Industrial Park, Inc. (1962); and

money [2] made by the individual taxpayers to the corporate taxpayers. The Commissioner determined that the transfers of property were not sales and that the advances of money were not loans; instead, his determination was that both types of transactions represented contributions to capital. Having concluded that no debtor-creditor relationship was created by these transactions, deductions for purported interest payments were disallowed since no valid indebtedness existed within the meaning of 26 U.S.C.A. § 163.[3] The Commissioner's determination also meant that the basis of the property in the hands of the corporations had the same basis that it had in the hands of the individual transferors under 26 U.S.C.A. § 362 [4] and not the higher basis of the alleged sales price. The Commissioner's alternative assertion in some of these cases is that if the transfers were not contributions to capital, they were transfers in exchange for the transferee corporations' stock or securities within the meaning of 26 U.S.C.A. § 351. The essence of the taxpayers' contention is that the land transfers were bona fide sales and that a valid debtor-creditor relationship was otherwise established between the individuals and the corporations. The taxpayers thus assert that the corporations are entitled to deductions for interest paid or accrued on the "indebtedness", and that the property acquired from the individuals should receive a stepped up basis in the hands of the corporations, i.e. the sales price.

A second issue involves the question of whether or not one corporate surtax exemption should be allocated among Lake Park, Inc., Sherwood Acres, Inc., and Lake Park Additions, Inc. Title 26 U.S.C.A. § 11 imposes a normal tax and a surtax on the taxable income of every corporation. The first $25,000 of a corporation's income is exempt from the surtax, however, so that the surtax is imposed on corporate taxable income only insofar as it exceeds $25,000. If Section 11 of the Internal Revenue Code stood alone, it would be possible to enjoy substantial tax savings by forming multiple corporations from one integrated business. Section 269 of the Internal Revenue Code [5] provides, however, that if a person acquires control of a corporation and the principal purpose of the acquisition is tax evasion or avoidance by securing a benefit which he would not otherwise enjoy, the Commissioner

---

(8) Cornelia H. Walden, Loretta Haley, Katherine S. Haley, Emily Jean Haley, and William T. Haley through his guardian to Sherwood Acres, Inc. (1964).

2. The advances of money denominated by the parties to the transactions as loans were:
(1) Loretta Haley to Lake Park Additions, Inc. (1961);
(2) Spencer C. Walden, Loretta Gayle Walden and William Lawrence Walden to Slappey Drive Industrial Park, Inc. (1963).

3. Title 26 U.S.C.A. Sec. 163 provides, in relevant part:
"(a) General rule—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." See discussion *infra* concerning factors to be considered in determining what is necessary to create valid indebtedness.

4. 26 U.S.C.A. Sec. 362(a) provides in part:
"If property was acquired . . . by a corporation—

\*   \*   \*   \*   \*

"(2) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor . . . . "

5. 26 U.S.C.A. Sec. 269 provides: "Acquisitions made to evade or avoid income tax
"(a) In general.—If—
"(1) any person or persons acquire, or acquired . . . directly or indirectly, control of a corporation, or
"(2) any corporation acquires, or acquired . . . directly or indirectly, property of another corporation . . . and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then the Secretary or his delegate may disallow such deduction, credit, or other allowance."

may disallow such deduction, credit, or other allowance. The Commissioner thus determined in this instance that multiple corporations were formed in order to secure additional surtax exemptions.

The Commissioner also determined that income derived from the sale of certain real property was taxable as ordinary income and not, as the taxpayers contend, as a long term capital gain. Resolution of this question turns on whether tracts of land sold by Lake Park Additions, Inc. and Sherwood Acres, Inc. were capital assets within the meaning of 26 U.S.C.A. § 1221.[6] The Commissioner found that the property in question was held primarily for sale to customers in the ordinary course of business so that capital gains treatment was precluded.

The final issue is whether or not the defendant properly computed the basis of certain transferred property.

## II. FINDINGS OF FACT

### A. *Overview of Corporations.*

All of the corporations in question were organized for the purpose of developing real estate and with the exception of Cairo Developers, Inc., all were organized and controlled by direct descendants of J. T. Haley, a wealthy resident of Albany, Georgia. Mr. Haley had three children: a son, Joel T. Haley, Jr., and two daughters, Loretta Haley (married C. D. McKnight subsequent to the tax years in question) and Cornelia Haley. Joel T. Haley, Jr. died in 1955 and left surviving him his wife, Katherine Sherpard Haley, now Mrs. John W. Crouch, and two children, William T. Haley and Emily Jean Haley. Cornelia Haley married Spencer C. Walden, Jr.,

and they had three children: Spencer Thomas Walden, Loretta Gayle Walden, and William Lawrence Walden. Loretta Haley McKnight has no children.

The person primarily responsible for the organization and management of these corporations, with the exception of Cairo Developers, Inc., was Spencer C. Walden, Jr. Mr. Walden formed a real estate brokerage partnership with George M. Kirkland in 1947, and the business was later incorporated as Walden & Kirkland Realtors, Inc. Mr. Walden and his firm handled the management, development, improvement, sale, and leasing for each of the corporations involved here. These services also included financing, planning and dealing with engineers, architects, zoning and planning commissions and governmental and private financing agencies.

### B. *Pecan Haven, Inc.*

The first of these corporations to be formed was Pecan Haven, Inc., which was organized on June 18, 1947. The original shareholders were Spencer C. Walden, Jr., Loretta Haley, and Cornelia H. Walden. Mrs. Walden and Loretta Haley sold their stock in Pecan Haven to the Walden children in 1963.

The questioned transfer occurred on July 26, 1960, when Spencer C. Walden, Jr. transferred approximately 69.435 acres of land to Pecan Haven in exchange for the corporation's note for $65,000, payable in four installments. Mr. Walden's basis in the property was $19,057.28. Neither the interest rate nor the maturity date specified in the note was adhered to, and Mr. Walden failed to insist upon payment because he did not feel that the corporation could afford it. This factor is a recurring one in all of the corporate cases.

6. Title 26 U.S.C.A. Section 1221 provides in part:

"For purposes of this subtitle, the term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

"(2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business; "

### C. *Lake Park, Inc.*

Lake Park, Inc. was organized on November 21, 1950, by Joel T. Haley, Jr., Cornelia H. Walden and Loretta Haley. Mr. Haley's stock was subsequently transferred to his wife and children; Mrs. Walden transferred her stock to her children and Loretta Haley also transferred her stock to the Walden children.

On September 7, 1954, the original shareholders transferred 100 acres of land which they owned as tenants in common to the corporation for a total stated consideration of $50,000. The shareholders' basis in this land was $3,482.00.

### D. *Sherwood Acres, Inc.*

Sherwood Acres, Inc. was organized on September 6, 1954, by Joel T. Haley, Jr., Cornelia H. Walden and Loretta Haley. Mr. Haley's stock was transferred to his wife and children following his death, and there have been no further changes in the stock ownership of the corporation. The transfers in question occurred in 1954, 1960, and 1964.

On September 7, 1954, the three shareholders transferred approximately 48 acres of land having a basis to them of $4,148.62 to the corporation for a consideration of $24,000. The corporation paid $2,000 in cash to each shareholder and executed a demand note for the balance. The note was satisfied on June 30, 1960.

On January 2, 1960, Cornelia H. Walden, Loretta Haley and Katherine S. Haley (both individually and as guardian for her children) transferred approximately 142.78 acres of land having a basis to them of $8,577.88 to the corporation in exchange for notes totaling $214,170.03 which were due on or before January 2, 1965. It was subsequently discovered that the shareholders had conveyed 16.3 acres of this property to others prior to the January 2, 1960, deed to the corporation. The total purchase price was therefore adjusted to $189,720.02. New notes were executed bearing the same date and the same interest rate and due dates as the original notes.

On December 21, 1964, Sherwood Acres acquired an additional 84.252 acres in exchange for notes totaling $126,000 which were due on or before December 21, 1969. The shareholders' basis in this property was $4,976.04. No payments designated as principal have been made to Loretta Haley or Cornelia H. Walden.

Part of the property originally transferred by the shareholders to Sherwood Acres in 1954 abutted the northern right-of-way line of State Highway 50, better known as the Dawson Road. A 3.71 acre tract abutted the north side of this highway and was not platted off into residential lots when the plat of the subdivision was recorded in the office of the clerk of the Superior Court of Dougherty County. The plat contained the following printed legend with reference to this tract: "This area reserved for business." The property was entered on the books of the corporation as the "Dawson Road Land Reserve." On September 1, 1959, the corporation sold 58.824 percent of a 2.72 acre portion of the tract to a church and transferred to it the remaining interest in the 2.72 acres. The .99 acre which was retained by the corporation was sold to Texaco, Inc. for a gas station on July 7, 1965. The corporation reported the gain from the sale of this property as ordinary income rather than capital gain as now contended by the taxpayers. Spencer C. Walden, Jr. testified that the property sold to Texaco was not platted off because it was felt that it would be better as commercial property.

Another parcel of land located on Doncaster Drive in the Sherwood Acres subdivision was included in a plat recorded August 18, 1961, but was not subdivided into lots because of drainage problems. It was felt that the corporation lacked sufficient funds to correct the problem, and the area was set up in an account entitled "Land for Investment". In the fiscal year ending August 31, 1964,

Sherwood Acres made one sale from the parcel for $4,000, and in the fiscal year ending August 31, 1965, the corporation made four sales from this property for a total consideration of $14,887.44. The property was used for the construction of duplexes, and the gain was reported as ordinary income rather than capital gain as now contended by the taxpayers.

### E. *Lake Park Additions, Inc.*

On June 15, 1959, Cornelia H. Walden, Loretta Haley and Katherine S. Haley secured the charter for Lake Park Additions, Inc. and by June 22, 1959, the original shareholders and the Haley children had transferred 268.8 acres of land to the corporation having a basis of $19,861.48 to them for a total consideration of $368,200 with each transferor receiving a note for his or her respective interest. The notes were due in five years and bore interest at 3 percent. In 1965, the corporation made a $5,000 payment designated as principal to William Thomas Haley. No further payments of principal have been made on any of the notes delivered to the individuals in connection with the transfer.

Prior to the organization of Lake Park Additions, Inc., the incorporators had received a commitment from the Trust Department of the First State Bank of Albany [7] for development loans of up to $150,000.00 to be made from the estate of J. T. Haley, Sr. As of January 2, 1960, the corporation had borrowed $122,500.00 from the Haley estate. At the request of Spencer C. Walden, Jr., Loretta Haley loaned $61,250.00 to the corporation which was used to reduce the obligation due to the estate of J. T. Haley. Loretta Haley was given a note for $61,250.00 due August 2, 1962, with interest at 5 percent per annum.

In December 1963, Lake Park Additions sold 0.689 acres of land to the City of Albany for $2,500.00, and in the same month sold two acres to the Georgia Power Company for a consideration of $7,500. The land sold to the city was used for the construction of a pumping station and the land sold to the Georgia Power Company was used to construct a substation. Both parcels of land were originally purchased by Lake Park Additions at the same time it purchased the land which was subsequently subdivided. All the land acquired by the corporation was carried in an account known as the land account. The plaintiff alleges that this property was held for investment purposes and that its sale should be treated as a capital gain.

In addition to the foregoing, the Commissioner determined that after Lake Park, Inc. was organized, Sherwood Acres and Lake Park Additions were formed primarily for the purpose of obtaining additional surtax exemptions. The taxpayers contend that tax avoidance was not the principal purpose for the incorporation of Sherwood Acres and Lake Park Additions and hence, that each of the three corporations was entitled to the surtax exemption provided for in 26 U.S.C.A. § 269.

It is undisputed that the property developed by the three corporations is generally adjoining and located in the same area. The Lake Park property is separated from the Sherwood Acres proper by the Dawson Road; no street or other property separates Lake Park from the Lake Park Additions property.

As has been noted earlier, the principal figure behind the organization and development of these corporations was Spencer C. Walden, Jr. Mr. Walden testified that he had no tax avoidance motive in organizing these three separate corporations. He proceeded on the basis of advice received from Ted Mauldin, a Certified Public Accountant, who thought it best to have separate corporations. There was also testimony that the subdivisions were organized for differently priced homes and that separate corporations were called for because of adverse interests involved in the Sherwood Acres development.

7. The families of W. B. Haley and J. T. Haley own the controlling interest in this bank.

### F. Forest Estates, Inc.

Forest Estates, Inc. was incorporated on September 1, 1959, by Loretta Haley and her first cousin, Marjorie Scherberger. The stock ownership has not changed since the date of incorporation. On September 5, 1959, the shareholders transferred 49.93 acres of land to the corporation, having a basis to them of $761.54, in exchange for a note issued to each of them in the amount of $50,000.00 payable in five years.

### G. Slappey Drive Industrial Park, Inc.

Slappey Drive Industrial Park (hereinafter Slappey) was incorporated on July 7, 1962, with its sole shareholder being Cornelia H. Walden. Shortly thereafter Mrs. Walden gave her stock to her children. On July 10, 1962, Mrs. Walden transferred 80.78 acres having a basis of $10,138.35 to Slappey in exchange for $6,366.50 in cash and a $75,000 note, payable on or before eight (8) years and bearing interest at the rate of 4 percent. The principal on this note has never been paid.

On May 27, 1963, each of the shareholders—Loretta Gayle, Spencer T., and William L. Walden—advanced $5,000 to Slappey for which the corporation gave to each a note payable in one year with interest at the rate of 6 percent. No actual payments of interest or principal have been made on these obligations.

### H. Cairo Developers, Inc.

The organizational meeting for Cairo Developers, Inc. (hereinafter Cairo) was held on May 12, 1961, by the incorporators: Spencer C. Walden, Jr., George M. Kirkland, Jr. and J. Norwood Clark. Mr. Clark lived in Cairo, Georgia, and interested Messrs. Walden and Kirkland in the purchase and development of certain real estate in or near the City of Cairo; each of the three incorporators received 170 shares of stock in connection with the organization of the corporation. Fifty shares of Mr. Walden's stock were subsequently reissued to each of his three children and Walden retained 20 of his original 170 shares.

Cairo initially purchased two adjoining tracts of land, one tract consisting of approximately 19 acres and the other consisting of 255.48 acres. The larger tract was purchased by Cairo from Mr. Clark. On May 12, 1961, the partnership composed of Walden and Kirkland delivered an $8,000 check to Clark to be used in making the required cash payments on the tracts of land described above. The corporation executed promissory notes in addition to the cash payments for these purchases.

From May 12, 1961, through March 3, 1964, Cairo received advances from Spencer C. Walden, Jr., George M. Kirkland, Jr., Walden & Kirkland Partnership, Walden & Kirkland Realtors, Inc., J. Norwood Clark, the children of Spencer C. Walden, Jr., and Sherwood Acres, Inc., in the total amount of $57,900. These advances were evidenced by notes payable on demand or in one year. The first payments designated as principal on these advances were made on July 29, 1971. From that date until the present, the corporation has made payments designated as principal in the total amount of $35,600.

## III. CONCLUSIONS OF LAW

It is appropriate to begin an analysis of the applicable law of the case with a recitation of the burden that the plaintiffs must carry.

"The taxpayers' burden in a refund suit in the district court is to prove not only that the Commissioner erred in his determination of tax liability but also to establish the correct amount of the refund due. See, e. g., Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935), and Bar L Ranch, Inc. v. Phinney, 426 F.2d 995 (5th Cir. 1970). Thus, if insufficient evidence is adduced upon which to determine the amount of refund due, the Commissioner's determination of the amount of tax liability is regarded as correct." Crosby v.

United States, 496 F.2d 1384, 1390, (5th Cir.1974).

■ In determining whether the transfers of property are to be characterized as contributions to capital on the one hand, or sales and loans on the other, the numerous courts which have faced the issue have indicated that each case must be decided on its unique fact situation. *See, e. g.*, Estate of Mixon v. United States, 464 F.2d 394 (5th Cir. 1972); Dillin v. United States, 433 F.2d 1097 (5th Cir.1970); Tyler v. Tomlinson, 414 F.2d 844 (5th Cir.1969); Berkowitz v. United States, 411 F.2d 818 (5th Cir.1969). The substance of the transaction rather than its form controls the tax consequences, Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), and no single factor is decisive in making such a determination. *Berkowitz, supra; Dillin, supra.*

The criteria employed to resolve the debt-equity problem are designed to disclose the real nature of the transaction and

"[d]ecisions in this Circuit have stressed at least thirteen factors which merit consideration in determining this issue. They are:

"(1) the names given to the certificates evidencing the indebtedness;

"(2) The presence or absence of a fixed maturity date;

"(3) The source of payments;

"(4) The right to enforce payment of principal and interest;

"(5) participation in management flowing as a result;

"(6) the status of the contribution in relation to regular corporate creditors;

"(7) the intent of the parties;

"(8) 'thin' or adequate capitalization;

"(9) identity of interest between creditor and stockholder;

"(10) source of interest payments;

"(11) the ability of the corporation to obtain loans from outside lending institutions;

"(12) the extent to which the advance was used to acquire capital assets; and

"(13) the failure of the debtor to repay on the due date or to seek a postponement.

*Estate of Mixon, supra,* 464 F.2d at 402.

See also In re Indian Lake Estates (United States v. Stewart), 448 F.2d 574 (5th Cir.1971); Montclair v. Commissioner, 318 F.2d 38 (5th Cir.1963).

It has been stated that the essential difference between a creditor and a shareholder is that the latter makes an investment subject to the risks of the venture, while the creditor seeks a definite obligation, payable in any event. Wilshire & West Sandwiches v. Commissioner, 175 F.2d 718 (9th Cir.1949). Moreover, in Curry v. United States, 396 F.2d 630 (5th Cir.1968), the court stated that:

"[i]f repayment of an advance is contingent upon the success of the business, the advancement is usually considered a contribution to capital; conversely if an advance creates unconditional obligations to pay a sum certain on a set date, it is normally considered a debt. United States v. Henderson, 375 F.2d 36 (5th Cir. 1967); Tomlinson v. 1661 Corp., 377 F.2d 291 (5th Cir.1967)." *Id.* at 633.

■ In the cases now before the court, the taxpayers attached the "sale" label to the transfers of land and tried to clothe the transactions with appropriate documents and other indicia of a bona fide sale and debtor-creditor relationship. Given the nature of the family relationships, however, and the identity between the ostensible creditor and the shareholders, the label is entitled to little weight.

The recurring theme in each of the corporate cases is the disregard of the maturity dates on the notes. Timely interest payments were not made and in some cases, the principal amount due has never been satisfied. The "indebtedness" was generally unsecured, and no

action was ever taken to enforce payment of delinquent interest. The stated reason for the absence of timely interest payments was that the shareholder-creditors did not need the money. This assertion flies in the face of the taxpayers' contention that a debtor-creditor relationship was established.

If the ostensible creditors had attempted to enforce delinquent payments on the purported indebtedness, the corporations' financial structure would have been seriously undermined. Furthermore, the only expected source of income from which the purported debt could be satisfied was the sale of lots. It is therefore clear that repayment of the debt was predicated on the success of the venture.

These same considerations are applicable where stockholders' advances of money were denominated as "loans". The $61,250.00 advance to Lake Park Additions, Inc. by Loretta Haley was necessary to enable the corporation to meet its expenses. The corporation was thinly capitalized with substantial liabilities, and the corporation simply did not have sufficient funds to satisfy the note when it became due.

The loans to Slappey were also not indicative of a bona fide debtor-creditor relationship. Although the notes were executed in 1963 and were due one year after their execution, no payments of principal and interest have been made and no demands therefor have been asserted by the plaintiffs' shareholders.

The situation with respect to Cairo Developers, Inc. is somewhat different from the other corporate cases since two of the three shareholders of that corporation were not members of the Haley family. The circumstances are like the other cases, however, in that the individuals who made the advances were the sole shareholders, officers, and directors of the corporation. The alleged indebtedness was incurred to acquire the necessary assets and to meet expenses, and the principal and interest payments on the shareholder held notes were not timely made nor were demands for payment forthcoming. The only major source of income for the corporation was the sale of land, and it is clear that repayment of the purported indebtedness was dependent on the success of the business. In sum, insofar as the tax consequences are concerned, the absence of a complete tie to the Haley family is a distinction without a difference.

■■ With regard to the surtax exemption question, the commissioner determined that after Lake Park, Inc. was organized, two other corporations—Sherwood Acres, Inc. and Lake Park Additions, Inc.—were formed for the principal purpose of obtaining additional surtax exemptions. It is well established that a newly formed corporation is an "acquired" corporation within the meaning of 26 U.S.C.A. § 269. Bobsee Corp. v. United States, 411 F.2d 231 (5th Cir.1969). The *Bobsee* court shed further light on the operation of the statute when it stated that ". . . there are only two relevant classes of purposes: tax-avoidance and non-tax-avoidance; the statute applies only if the former class exceeds the latter." *Id.* at 239. In order to recover, therefore, the plaintiff must demonstrate that non-tax-avoidance purposes for separate corporations exceeded in importance any tax avoidance purposes. This burden has not been satisfied.

■ In view of the tax advantages which accrue through the formation of separate corporations to sell land in the same geographical area, the testimony that:

1. different corporations would sell differently priced homes;

2. adverse interests were involved in one subdivision; and

3. multiple corporations were advised by a Certified Public Accountant, is insufficient to warrant a reversal of the Commissioner's determination. The following excerpt from the deposition testimony of Mr. Mauldin sheds further

light on the reasons for multiple corporations:

"Q. Now you talked about the adverse interest involved in Sherwood Acres, why would a separate corporation be needed because you had adverse interests involved in the land?

"A. I thought it would be advantageous to do it.

"Q. Why would it be advantageous?

"A. It was just an opinion of mine, that's all?

"Q. Did you have any basis for that opinion at that time?

"A. No."

The taxpayers have failed to prove that non-tax-avoidance motives exceeded in importance any tax avoidance motive in forming separate corporations. Accordingly, the Commissioner's disallowance of the additional surtax exemptions must be sustained.

As has been noted earlier, the question of whether gains derived from the sale of certain property by Sherwood Acres, Inc. and Lake Park Additions, Inc. should be treated as capital gain turns on whether the real estate sold was a capital asset in the hands of the taxpayer. Section 1221 of the Internal Revenue Code defines the term as property held by the taxpayer which is not excluded by subsequent subsections contained therein. The United States Supreme Court has held that "[s]ince this section is an exception from the normal tax requirements of the Internal Revenue Code, the definition of a capital asset must be narrowly applied and its exclusions interpreted broadly." Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 52, 76 S.Ct. 20, 24, 100 L. Ed. 29, 35 (1955). One exclusion which precludes the classification of property as a capital asset is property held "primarily for sale to customers in the ordinary course of his trade or business." 26 U.S.C.A. § 1221(1). The Supreme Court has also held that as used in section 1221(1), "primarily" means "principally" or "of first importance." Malat v. Riddell, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966).

In United States v. Winthrop, 417 F. 2d 905, 910 (5th Cir.1969), the court restated the criteria most often employed in determining whether property is properly classified as a capital asset:

". . . (1) the nature and purpose of the acquisition of the property and the duration of the ownership; (2) the extent and nature of the taxpayer's efforts to sell the property; (3) the number, extent, continuity and substantiality of the sales; (4) the extent of subdividing, developing, and advertising to increase sales; (5) the use of a business office for the sale of the property; (6) the character and degree of supervision or control exercised by the taxpayer over any representative selling the property; and (7) the time and effort the taxpayer habitually devoted to the sales." (citation omitted) *Id.* at 910.

The court went on to state, however, that:

"Despite their frequent use, this court has often declared that these seven pillars of capital gains treatment 'in and of themselves * * * have no independent significance, but only form part of a situation which in the individual case must be considered in its entirety to determine whether or not the property involved was held primarily for sale in the ordinary course of business . . . .' " *Id.* at 910.

■ Apart from the taxpayers' assertion that the property was not held primarily for sale to customers in the ordinary course of business but was held for investment, there is little evidentiary support in the record that would warrant a capital asset classification. The tracts sold to the City of Albany and the Georgia Power Company by Lake Park Additions, Inc. were acquired at the same time that it purchased the land

which was subsequently subdivided. All of the land acquired by the corporation was carried in one account known as the land account. The major portion of the land so acquired has been subdivided into lots for sale to customers in the ordinary course of business. In short, the taxpayers' assertion that the land was held for investment purposes is contrary to the weight of the evidence, and the plaintiff has failed to carry its burden of proof on this issue.

With respect to Sherwood Acres, Inc., it is true that certain property was not platted off into residential lots when the plat was recorded in the office of the Clerk, Dougherty County Superior Court. It is also true that the property was set up in an account entitled the "Dawson Road Land Reserve." This additional evidence is insufficient to sustain the taxpayers' contention, however, and the evidence taken as a whole suggests that this parcel was part of the property originally acquired for the purpose of subdividing and selling to customers in the ordinary course of business.

The other parcel of land which the taxpayer contends was a capital asset is the land located on Doncaster Drive. This property was included in the plat which was filed but was not subdivided; the land was set up in an account entitled "Land for Investment." The property was eventually sold for residential purposes by a corporation admittedly formed to sell residential property; and the gain derived from its sale must be treated as ordinary income.

The final issue stipulated by the parties concerns the computation of the basis of certain transferred property. The parties have indicated that a recomputation of the basis is being prepared and that the court will be advised if the parties cannot agree on the recomputation. The court having reserved a decision on this issue,

It is ordered, adjudged and decreed that the claims for refund must be and the same are hereby denied. Let counsel for the defendant prepare judgments in accordance with the findings of fact and conclusions of law and submit the same to the court after affording counsel for plaintiffs an opportunity for suggestions as to form.

So ordered.