981 F.2d 1251
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Gerald D. ROBERTS; Judy A. Roberts, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 92-1331.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 29, 1992
Decided: December 17, 1992
 
 Appeal from the United States Tax Court.
 Robert Craig Anderson, for Appellants.
 Sarah Kay Knutson, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, for Appellee.
 James A. Bruton, Acting Assistant Attorney General, Gary R. Allen, William S. Estabrook, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, for Appellee.
 USTC
 AFFIRMED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Gerald Roberts has appealed a large deficiency in income tax assessed by the Internal Revenue Service (IRS) and confirmed by the United States Tax Court. Roberts (together with his wife Judy) has contested the characterization of certain travel expenses paid by and loans from his closely held corporation as constructive dividends. Roberts has also claimed error in the failure of the IRS to deduct interest calculated on the loans in determining his tax.
 
 The issues are:
 
 2
 1. Did the Tax Court err in finding that certain travel-related expenses paid by the closely held corporation constituted constructive dividends to the taxpayer?
 
 
 3
 2. Did the Tax Court err in finding that certain loans made by the Corporation to the taxpayers constituted constructive dividends?
 
 
 4
 3. Did the Tax Court abuse its discretion in declining to entertain taxpayers' post-trial request for a deduction of $4,566 paid as interest on corporate loans to the taxpayers?
 
 
 5
 In 1981, Gerald Roberts and his wife Judy organized a corporation, Gerald Roberts Consultants, Inc., whose stated purpose was "[t]o carry on a general engineering and consulting business relating to power plants." Roberts served as President and Chairman of its Board of Directors and Judy served as Secretary/Treasurer and Secretary on the Board of Directors. Roberts owned or controlled 100% of the stock, was the sole employee of the corporation, generated all of its income, and received all the wages paid by the corporation.
 
 
 6
 Beginning in October 1981, the corporation entered into a series of contracts to provide nuclear power management, training and consulting services. The corporation worked under two contracts with Power Management Consultants Corporation (PMC) from October 1981 until June of 1985. In July, August and September of 1985, the corporation was without a contract and the Roberts travelled from their home in Illinois to North Carolina to look for work. The corporation purchased a travel trailer at about that time and parked it in Southport, North Carolina; Roberts lived in the trailer while seeking employment.
 
 
 7
 In October 1985, the corporation accepted a contract with Walker Training Services to establish a training program for nuclear operators at the Hatch Nuclear Power Plant in Savannah, Georgia. Upon receiving the contract, the couple sold their home in Illinois, and leased a residence in Savannah. Shortly thereafter the taxpayers also rented property in Supply, North Carolina, and moved the trailer from Southport to Supply.
 
 
 8
 In March 1986, the corporation entered into a one year contract with Resource Technical Services, Inc., to develop a safe plant shutdown procedure for the Brunswick Steam Electric Station in Southport, North Carolina.
 
 
 9
 The corporate tax returns prepared for the wholly owned corporation took a number of deductions which the IRS subsequently disallowed. The 1985 and 1986 individual tax returns for the Roberts did not report as income a broad variety of reimbursements, property and benefits that taxpayers received from the corporation, which the IRS found were non-deductible personal expenses and therefore constructive dividends from the corporation. In a consolidated trial, the corporation and the Roberts challenged the constructive dividends determinations, and the Tax Court found in favor of the IRS on both the corporate and personal tax returns. The corporation has not appealed, and the taxpayers have conceded or decided not to appeal the Tax Court's determinations with respect to many of the items listed in the original notice of deficiency. However, the Roberts individually have appealed the Tax Court's findings with respect to certain travel per diem expenses in the amount of $19,845, and loans made to Gerald or the Roberts from the corporation of $16,000. In addition, on appeal, the Roberts have raised an issue with respect to the deductibility of a check for $4,566, which they paid to the corporation as interest on the loans. They had not raised that issue in the Tax Court proceeding.*
 
 
 10
 The Tax Court found that "Gerald Roberts caused Roberts Consultants to be organized in order to convert personal living and family expenses into business expenses." The court found Gerald Roberts' testimony unconvincing and not credible with regards to his explanations for those expenses. It determined that the payments characterized by Roberts as per diem payments "were not ordinary and necessary corporate business expenses.... Roberts received an economic benefit as a result of these payments." It found that the automobile expenses were reimbursements of Gerald Roberts' personal expenses, and that the loans received were never repaid and thus constituted a constructive dividend to him.
 
 
 11
 The Roberts moved for a reconsideration, which was summarily denied, and has thereafter herein appealed.
 
 
 12
 We address first whether the Tax Court erred in finding that certain travel-related expenses paid by the closely held corporation constituted constructive dividends to the taxpayer. Under 26 U.S.C. § 162(a), a taxpayer may deduct traveling expenses while away from home in pursuit of a trade or business. The taxpayer must have a permanent tax home and his employment at the distant work site must be of temporary duration; the expenses must be reasonable and necessary and incurred in pursuit of business. Commissioner v. Flowers, 326 U.S. 465 (1946); Daly v. Commissioner, 662 F.2d 253 (4th Cir. 1981) (en banc ). The deductibility of the expenses is permitted in order to "mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain two places of abode and thereby incur additional and duplicate living expenses." Truman C. Tucker, 55 T.C. 783, 786 (1971).
 
 
 13
 Between October 1985 and March 1986, Gerald Roberts was working under the Walker Training Services contract in Savannah, Georgia while his family was living in Supply, North Carolina, several hours away. His contention has been that the expenses he deducted for his rent, utilities, and meals in Savannah, and auto expenses for traveling back and forth between Savannah and Supply, were business expenses made necessary by the fact they he was temporarily working away from home. Although the contract was for one year, Gerald Roberts has contended that he intended to find and in fact eventually did find permanent employment near Supply.
 
 
 14
 The Tax Court determined that the duplicate living expenses were "purely a matter of [the Roberts'] own preference," and were not caused by the exigencies of the employer's business. A Tax Court's determination of whether deductions were the result of reasonable and necessary expenses incurred while working temporarily away from home in pursuit of business is a question of fact, which should not be reversed unless clearly erroneous. See Flowers, 326 U.S. 465, 470. The record supports the Tax Court's finding.
 
 
 15
 The Walker contract provided that all services would be performed in Savannah, Georgia. The Roberts did not establish a home in Supply until after they had negotiated the Walker contract. Evidence showed that they had previously lived in Supply, had friends working there, and liked the ocean location. Duplicate living expenses incurred because of personal choice of place of residence rather than necessity of business are not deductible. Truman C. Tucker, 55 T.C. 783 (1971). Although work in Gerald Roberts' field was by its nature indefinite and relatively impermanent, the Walker contract was originally designated to run through August of 1986, a not insubstantial or indefinite time period. See Babeaux v. Commissioner, 601 F.2d 730 (4th Cir. 1979) (per curiam), cert. denied, 444 U.S. 993 (1979) and 445 U.S. 943 (1980) (expenses not deductible when employment away from home is of substantial or indefinite duration); Commissioner v. Peurifoy, 254 F.2d 483, 486 (4th Cir. 1957), aff'd, 358 U.S. 59 (1958) (inherent impermanence of certain industries does not make work in such industries deductible).
 
 
 16
 Personal expenses of the taxpayer rather than business expenses of the corporate employer are nondeductible by the corporation and nondeductible by taxpayers. When these expenses have been reimbursed by a taxpayer's wholly owned corporation, they may also be includible in the taxpayers' income as constructive dividends. A taxpayer may be charged with constructive dividend income even though the corporation has not observed the formalities of dividend declaration and even though neither the corporation nor shareholder intended a dividend. Crosby v. United States, 496 F.2d 1384 (5th Cir. 1974). The crucial factor in deciding whether a constructive dividend has been made is whether the corporation has conferred an economic benefit on the stockholder without expectation of repayment. Id. at 1388; Mills v. Commissioner, 840 F.2d 229, 235 (4th Cir. 1988). Having determined that the expenses incurred by living and working in two different locales were not ordinary or necessary business expenses, the Tax Court went on to find that the money spent on the expenses conferred an economic benefit on Roberts and thus constituted constructive dividends. The Roberts have argued that the finding was merely a conclusory one offered without explanation. No economic benefit was derived, the Roberts have contended, since Gerald Roberts' living expenses were greatly increased and duplicated because of the job away from home. However, an economic benefit can be seen in the Roberts' maintenance and enjoyment of two homes, rather than one. The travel and living expenses in Savannah were the consequence of the Roberts' preference of living in Supply, not the necessity of working in Savannah.
 
 
 17
 The Roberts have contended that the Tax Court's determination that the nondeductible expenses were constructive dividends was based on a faulty reading of 26 U.S.C. § 162(a)(2). The Tax Court stated that "[h]ad Gerald Roberts not utilized Roberts Consultants to receive payments from Walker Training ... he would not have been entitled to a deduction for travel and other expenses while working at ... Savannah ... and maintaining a family home in Supply." Roberts has taken that to mean that the Tax Court vieweds 162(a)(2) as setting out two different tests for individual tax deductions and corporate tax deductions. Since § 162(a)(6) envisions the same test for corporate and individual deductions, Roberts has argued that the Tax Court's factual determinations were induced by an erroneous view of the law. Read, however, within the context of the findings of facts and conclusions of law, it is clear the Tax Court was not operating under the misconception that the Roberts have claimed it did. The Tax Court was simply noting that since Roberts could not have taken the deduction had he been working as an individual, there was no reason why he should be able to take the deduction simply because he was working through his wholly owned corporation.
 
 
 18
 The IRS has further argued that the expenses claimed by the Roberts were nondeductible because they were not adequately substantiated by records or sufficient evidence. Adequate records are an account book, diary, statement of expenses or similar evidence, which in combination are sufficient to establish each element of an expenditure, those elements being the amount, the time and place of the travel, and the business purpose. See Berkely Mach. Works & Foundry Co. v. Commissioner, 623 F.2d 898, 906 (4th Cir. 1980).
 
 
 19
 Taxpayer has submitted a variety of daily records, per diem expenses sheets, disbursement journals and the like, which note, in varying detail, living and automobile expenses during the period in question. Gerald Roberts thus has taken issue with the Tax Court's characterization of the substantiation as vague and nonspecific. The Tax Court's problem with the records seems to have had more to do with the lack of explicit business reasons put forward for the expenses, rather than with a lack of record keeping as to what was spent. Even assuming that all the expenses detailed were genuine, concurrent records of expenses incurred, the Taxpayer's concededly heavy burden was not met. In light of the Court's determination that taxpayers' personal and business lives were largely enmeshed, the records did not adequately specify the business purpose of each expense.
 
 
 20
 Finally, the Roberts have argued that a constructive dividend is only taxable as ordinary income to the extent that the corporation has earnings and profits as defined in 26 U.S.C. § 312. If the corporation has no earnings and profits, the dividend will be treated as a tax-free return of capital to the extent of the stockholder's tax basis in the stock, the remainder being treated as a capital gain.
 
 
 21
 The Roberts did not offer such an argument to the Tax Court. The argument on appeal is further hindered by the fact that the Roberts did not offer any computation of earnings and profits to the Tax Court which could have served to prove the issue. The burden of proof lies with the taxpayer, see Estate of DeNiro v. Commissioner, 746 F.2d 327, 333 (6th Cir. 1984), and has not been met here.
 
 
 22
 Next we turn to whether the Tax Court erred in finding that certain loans made by the wholly owned corporation to the taxpayers constituted constructive dividends. Cancellation by a corporation of shareholder indebtedness constitutes a constructive dividend to the shareholder. Whether a transfer from a corporation to a shareholder is debt for which repayment is expected depends on the intention of the parties at the time the withdrawals by the shareholder were made. Mills v. Commissioner, 840 F.2d 229, 233 (4th Cir. 1988); Road Materials, Inc. v. Commissioner, 407 F.2d 1121 (4th Cir. 1969). To determine whether the taxpayer intended to repay the withdrawals, courts have looked to several objective factors, no single one of which is controlling. For example, courts look to testimony that a transfer was intended to create a genuine obligation, when supported by contemporaneous entries in the books; early repayment of part of the amount; and a long history of intercorporate advances on open accounts, all of which have been completely repaid. See Mills, 840 F.2d at 233. Moreover, courts apply special scrutiny to advances made by corporations to their sole stockholders. See Jacques v. Commissioner, 935 F.2d 104, 109 (6th Cir. 1991).
 
 
 23
 At issue are five payments totalling $16,000 made by the corporation to Gerald Roberts. He characterized the payments as loans. The Tax Court found that such "loans" had been forgiven by the corporation and were thus constructive dividends. The Tax Court based its determination on a combination of factors including inconsistent corporate records, reclassification of withdrawals, words having been scribbled out from entries beside checks, the word"loan" having been apparently squeezed in to augment an entry in the disbursement journal, no notation on the checks by which withdrawals were made as loans, lack of confirmation on the corporate profit and loss statement for purported bonuses due to illegibility of taxpayers' records, lack of payments on the principal of purported loans, and a reduction in amount of loans outstanding on corporate books without corresponding loan repayments.
 
 
 24
 The taxpayers argued at trial that the $16,000 represented "bona fide corporate loans," but gave as verification only a general response that evidence of repayment was reflected in the records and later tax returns. Later, the taxpayers argued in their motion for reconsideration and again on appeal, that the withdrawals were constructively repaid in the form of uncompensated bonuses. As evidence they point to promissory notes accompanying the withdrawals with notations that the loan was "taken as bonus 9/85," and similar notations on the disbursement journals. They also point to the difference between the actual wages paid to Roberts as reported in the disbursement journals and the wages reported on the W-2 forms as evidence that the difference constituted repayment of the loans. In sum, the Roberts' arguments amount to renewed efforts to prove facts that the Court below had already found to their detriment.
 
 
 25
 The Tax Court's finding that the loan had not been repaid, based on its appraisal of Taxpayer's evidence as inconsistent, highly suspect, and tampered with, is not clearly erroneous and therefore, cannot be disturbed. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291 (1960); Road Materials, 407 F.2d at 1123.
 
 
 26
 Finally, we consider whether the Tax Court abused its discretion in declining to entertain taxpayers' post-trial request for a deduction of $4,566 paid as interest on corporate loans. The taxpayers have, on appeal, contended that they are entitled to a deduction of $4,566 based on a check written to repay interest on loan amounts taxpayers owed to the corporation. The interest payment by taxpayers was not deducted on Schedule A of their personal 1040 return, and the IRS failed to provide them with an offsetting Schedule A deduction. Taxpayer first made an issue of the discrepancy in his post-trial brief, although the oversight came to light during the trial testimony of Vince Sinervo.
 
 
 27
 The IRS has contended that the taxpayers' arguments were untimely raised and that the Tax Court did not abuse its discretion in declining to entertain them. See Granzow v. Commissioner, 739 F.2d 265, 269 (7th Cir. 1984) (affirming a Tax Court's finding that issue raised on the eve of trial was untimely and appropriately disregarded). A taxpayer's petition in a deficiency action is required to contain assignments of each and every error alleged committed, and "[a]ny issue not raised in the assignment of errors shall be deemed to be conceded ... " Tax Ct. R. 34(b)(4). Roberts has contended that, nevertheless, the pre-trial audit of the records by the IRS could have established the deduction, the IRS could have cross-examined Sinervo about the deduction at trial but did not, and the IRS did not object to the admission of the interest check at trial. Therefore, he has argued, neither Tax Ct. R. 34(b)(4) nor Granzow nor Estate of Gillespie v. Commissioner, 75 T.C. 374, 380 (1980) (holding that it would be inequitable for a Court to rule on an issue that the Commissioner had no reason to anticipate and no opportunity to address at trial), applies. It is unfair, Roberts has argued, for reasons equitable in nature, to audit a return and propose a tax increase but fail to give the taxpayer credit for an obvious deduction the taxpayer initially missed.
 
 
 28
 The deduction, however, does not appear to be so obvious as taxpayer would have it. Entitlement to deductions must be proven by the taxpayer, see New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934), and taxpayers have failed to carry their burden. The Court doubted that the payment was in fact an interest payment since at the time it was written, the total loans outstanding were only $7,050, making an interest payment of $4,566 unlikely.
 
 
 29
 Accordingly, the judgment of the Tax Court is AFFIRMED.
 
 
 
 *
 The Roberts also appealed the Tax Court's determination that $1617 of purported job-hunting expenses were constructive dividends. Of this amount, the government conceded $1,385 after trial and agreed on appeal that an adjustment for that amount was inadvertently omitted from the computation for entry of decision filed by the Commissioner. With regard to the remaining $274, the corporate records indicate that these expenses were not incurred during the period subject to appeal by taxpayers