**WESTERN COTTONOIL COMPANY, Appellant,**

v.

**J. C. HODGES and Mary Weinberg, Appellees.**

**No. 14702.**

United States Court of Appeals Fifth Circuit.

Dec. 15, 1954.

As Modified on Denial of Rehearing Jan. 21, 1955.

M. S. McCorquodale, Houston, Tex., Carl P. Springer, Abilene, Tex., Mc-Mahon, Springer, Smart & Walter, Abilene, Tex., Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellant.

Eugene E. Piper, Borger, Tex., Dallas Scarborough, J. R. Black, Jr., Beverly Tarpley, Abilene, Tex., Piper, Gassaway & Allen, Borger, Tex., Scarborough, Yates, Scarborough & Black, Abilene, Tex., for appellees.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment by the court without a jury in favor of plaintiffs, as the owners of a motor court, against the defendant for the maintenance of a nuisance in the nature of an open pit in which defendant stored an ill-smelling by-product known as "soap stock." The issues as to liability and damages are narrowed here by the concession made by appellant in its brief as follows:

"We have no quarrel with the finding of the Court that the loss in revenue amounted to $500 per month. Soap bowl odors began about June 1, 1952, and would end within nine months from and after April 13, 1953, the date of the trial. We have no quarrel with the calculation that the nuisance had existed and would exist for a total period of 20 months and that the total reduction of revenues would amount to $10,000.

"Our contention is, and our second specification of error is that: A clear preponderance of the evidence shows that nearly all of the loss in revenue was due to the change in highway, and a little of it due to poor operation of the tourist court after Mary Weinberg moved away and ceased to devote her time to assisting her husband in running the business. Our contention is: A finding that 25% of the loss was caused by the soap bowl is against the clear preponderance, and is against the overwhelming preponderance, of the evidence."

Another specification of error is that the trial court overruled a plea in abatement alleging that there was a non-joinder of parties plaintiff. This plea was

based on the fact that the nominal plaintiffs were divorced during the pendency of this suit, and, the plea alleged, that in dividing the property of husband and wife, the divorce court had awarded one-third of any recovery which might be obtained in this action to parties other than the nominal plaintiffs, (it being contended that the state court judge in the divorce action assigned to the lawyers this one-third interest).

■ Considering the matter of the plea in abatement first, it appears from the judgment of the state court in the divorce action that there was no such assignment of an interest in the pending Federal court suit as would make the assignees necessary parties to this litigation.[1]

■ Appellant contended that in appellees' argument in the trial court and in their disclaimer filed in response to the plea in abatement their counsel repeatedly considered the action of the divorce court a mistake and it contends that the statement that a mistake was made by the divorce court is binding on appellees; that therefore the court below should have abated the action to permit the state court to correct this mistake. The answer to this contention is that it is im-

material to this proceeding if the "mistake" of the divorce court did not result in placing an interest in this suit in the lawyers. If the mistake merely consisted of the court's erroneously directing that one-third of the ultimate recovery be paid to the lawyers, which we hold is the effect of the judgment there, then the court below is not in any way concerned with the correction of any such "mistake" by the divorce court. Certainly it cannot be contended that we are bound to conclude from counsel's construction of the divorce court's order as an assignment of an interest in the suit that such was its legal effect when we have the actual order before us. It is our duty to construe it and in doing so we are not bound by any construction that may have been placed on it by either the parties or the court below.

Furthermore, even if the effect of the divorce court's judgment was to transfer an interest in the suit to the lawyers, they not only filed a disclaimer, but also signed a conveyance themselves as to any interest they had to the nominal plaintiffs. Appellant complained that this was an effort by the lawyers to make a disposition of an asset of the community and that only the divorce court could do that, since in a divorce proceeding in

1. The State court's decree provided as follows:

"And it was brought to the attention of the Court that there is certain personal property owned by the parties hereto consisting of a chose in action, namely, to-wit:

"An interest in a certain suit against the Western Cotton Oil Company, Inc. in the United States District Court for the Northern District of Texas, Abilene Division, the same being Civil Action No. 928 on the docket of the said Federal Court, and it appearing to the Court that any recovery had and obtained in said action should be owned by the parties hereto in equal amounts.

"It Is Therefore Ordered, Adjudged and Decreed that * * * the interest and the chose in action interest in a certain suit against the Western Cotton Oil Company, Inc., in the United States District Court for the Northern District of Texas, Abilene Division, Civil Action No. 928 on the docket of said Court, is the

community property of Mary E. Hodges and J. C. Hodges in equal amounts and that each of them own a fifty (50%) per cent interest therein and, specifically, Mary E. Hodges is entitled to fifty (50%) per cent of any recovery had and obtained in and for the cause of action above referred to, in Civil Action No. 928 on the docket of the said Federal District Court.

"It is Therefore Ordered, Adjudged and Decreed that the receiver, Roy Skaggs, pay out the proceeds of any recovery had and obtained in said Civil Action No. 928 as follows:

"One-third (⅓) of any recovery had and obtained to J. C. Hodges;

"One-third (⅓) of any recovery had and obtained to Mary E. Hodges;

"Three-Fifths (⅗) of one-third (⅓) of any recovery had and obtained to Dallas Scarborough, attorney for J. C. Hodges.

"Two-Fifths (⅖) of one-third (⅓) of any recovery had and obtained to Eugene E. Piper, attorney for Mary E. Hodges."

Texas the court has jurisdiction to decree a division of the estate of the parties in such a way as the court may deem just and right, citing Ex parte Scott, 133 Tex. 1, 123 S.W.2d 306.

The action by the lawyers here however, if they actually owned any interest in this suit, was not to dispose of any asset of the community of Hodges and wife, but it was a disposition by them of an asset that belonged to them. They could make such disposition of it as they saw fit. The fact that they conveyed it to Hodges and his wife in no way changed the nature of their act into an interference with the divorce court's right to dispose of the community assets.

Under the facts as set out and the circumstances existing at the time of trial, we hold that the trial court did not err in overruling appellant's plea in abatement.

The court found, and appellant in effect conceded the correctness of such finding, that between June 1, 1952, and a period ending nine months after April 13, 1953, plaintiffs would suffer a total reduction of revenues in the sum of $10,000 under that which would have been enjoyed but for the existence of a set of intervening circumstances. These circumstances, found by the court, were a change in the location of a main highway, the departure of one of the plaintiffs, Mrs. Hodges, who moved away after the divorce and thus ceased to devote her time to the running of the business, and the existence of the admitted nuisance.

The court allocated 50% of this $10,000 loss to the removal of the highway, 25% to the departure of Mrs. Hodges and the building of new tourist courts, and 25% to the nuisance, and thus entered a judgment for $2500 in favor of plaintiffs.

Appellant stated as its contention that: "A finding that 25% of the loss was caused by the soap bowl is against the clear preponderance, and is against the overwhelming preponderance, of the evidence." In the statement of its specifications of errors, appellant goes further and states: "There was no substantial evidence to establish that one-fourth of the loss of revenue was caused by the defendant."

Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C. provides that "in all actions tried upon the facts without a jury * * * findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." This court has held, in conformity with this rule, that it may reverse "(1) where the findings are without substantial evidence to support them; (2) where the court misapprehended the effect of the evidence; and (3) if, though there is evidence which if credible would be substantial, the force and effect of the testimony considered as a whole convinces that the finding is so against the great preponderance of the credible testimony that it does not reflect or represent the truth and right of the case." Sanders v. Leech, 5 Cir., 158 F.2d 486, 487.

Viewed against this standard by which we must measure the question whether the trial court's finding of damages can stand, we conclude that the findings are not without substantial evidence to support them; this court did not misapprehend the effect of the evidence, and giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses, and accepting therefore, his finding that plaintiffs' witnesses spoke the truth as to the facts related by them the finding is not so against the great preponderance of the credible testimony that it does not reflect or represent the truth or right of the case.

While no witness testified as to the number of persons who left the tourist court or who failed to patronize it specifically on account of the existence of the evil-smelling "soap bowl," there was material evidence given both by the plaintiff, by tenants and by neighbors to the effect that the odors were marked and were extremely unpleasant and disagreeable. On this point one tenant testified: "Well I smelled it in '52 and in '53, ever since I

have been there, but it got worse, it was worse this last time"; and then again "Well I don't know whether it was the same. At times it would nearly kill me." This witness also testified as follows:

"Q. Did you ever see anybody come up there and offer to register and discover that odor? A. Well, yes, sir, and they left, all the time, on account of it. I was the oldest one staying there, and they would tell me before they would tell Mr. Hodges about it. They would tell me they were going to leave because they just couldn't take it."

Although counsel for defendant objected to further conversations on the ground that they would be hearsay, no motion was made to strike this testimony and counsel later, on cross-examination, reopened the subject by asking the following question: "Now, those women, when they would come over there to visit it, and say they couldn't stand it, and get up and leave, who were these women?" In response to this question the witness answered: "Some from San Antonio and different places."

The plaintiff himself testified without objection that he attributed 90% of the decline in his business to the Western Cottonoil Company, the dust and the odor, and also testified that after this objectionable odor had developed his repeating guests had quit; that "they do not come anymore." He further stated without objection that he knew of nothing else that caused the loss of his repeating customers.

In the absence of the production of persons who actually left the tourist court because of the nuisance and of unknown persons who decided not to patronize it on account of this condition, it seems that the most a complaining party could do to show that he was damaged from the existence of an admitted nuisance would be to show, in addition to its existence, a loss of revenue, and to show any other circumstances which might be expected to contribute to such loss. Appellant complains that the plaintiffs themselves never would make an es-

timate of the percentage of the loss attributable to the nuisance. While the conclusion quoted above from the testimony of the plaintiff placed it at 90% of his loss of revenue, if may be said that defendant's counsel assiduously sought to prevent, as he had a right to do, every effort made by plaintiffs to draw conclusions from the record and facts that were in evidence. Appellant itself contends in its brief that statistics, showing for a certain period there was a 61.-17% loss of traffic on the street in front of the tourist court after the re-routing of Highway No. 80, would, in the absence of some other explanation, constitute a clear preponderance of the evidence that the change of the highway caused substantially the entire loss of revenue by the tourist court. The difficulty with this contention is that there was some other explanation by which such conclusion should be modified. The 61.17% drop occurred as between 1950 and 1951; there was actually a slight increase in 1952 and the $500 monthly decrease in income which defendant conceded occurred for 20 months did not start until April, 1952. Thus the statistics so strongly relied on by appellant to show that a clear preponderance of the evidence was that the change of the highway caused substantially the entire loss, fails to support this contention. The court would have been no more justified in concluding that the entire loss was attributable to the change in traffic pattern, as contended by appellant, than he was in attributing a part of it to the nuisance which appellant contends he had no right to do. Appellant's objection really comes down to the proposition that plaintiff could not recover unless some witness had been able to trace a demonstrable mathematical computation connecting the existence of the nuisance and the precise figure of 25% which the court found. This degree of mathematical nicety is not required.

A case somewhat similar to the one before us, in which the court undertook to assign a dollar value to damages where a loss occurred, is Ginsberg v. Royal In-

surance Company, 5 Cir., 179 F.2d 152, 153. In that case we said:

"A careful consideration of the record testimony reveals that much of the evidence as to the damages and the fair market value of the dresses and blouses before and after the fire was in sharp dispute. Moreover, the trial court heard and observed each witness who testified in the case, and under the evidence adduced he was justified in finding that some of the stock in question was old and obsolete and of relatively small value, and that not all of the dresses and blouses were damaged. It was proper for him to estimate as best he could, using his best judgment and according due weight to the credibility of the various witnesses, the number of garments damaged, their value before and after the fire, the number of garments which were found to be old and obsolete, and their respective values. Although more specific findings of fact upon these issues would have been helpful and appropriate, a failure to make them does not constitute reversible error. Neither may the court now be put in error for its failure to reveal the method employed in calculating the amount of damages awarded, for the method of assessing unliquidated damages in any case is not required to be revealed by a trier of the facts, either court or jury."

The trial court here had before it the fact that the "soap bowl" was a malodorous nuisance, which fact appellant concedes in its brief on appeal; that during the existence of this nuisance there was a total reduction of revenues of $10,000 and this fact is likewise conceded; that a substantial reduction in available patrons had resulted from a change in the traffic pattern; that Mrs. Hodges had left the business and no longer participated in its management; that numbers of persons left the plaintiff's tourist court and others declined to return on account of the existence of the nuisance; there was also data in the exhibits showing the relation of these several events to the monthly receipts by the plaintiff's business. It was proper for the court to estimate as best he could, using his best judgment and according due weight to the credibility of the various witnesses, the effect of each of these factors in making up the total loss suffered by the plaintiffs.

There being no error on either of the assigned grounds, the judgment is affirmed.

On Petition for Rehearing.

PER CURIAM.

Upon motion for rehearing, appellant takes issue with the statement in our opinion to the effect that April, 1952, was the month the nuisance was created. While several nuisances were alleged, the findings of the trial court related primarily to the building of the soap bowl. The record is not very clear as to the date it became offensive, but June 1 seems to be the correct date. Appellant concedes in its brief that "soap odors began about June 1, 1952." Appellee testified that they began more than a year before the trial, which began on June 2, 1953.

Appellant also conceded that the appellees' loss in revenue amounted to $500.00 a month for a period of twenty months beginning June 1, 1952. Appellant attributes this almost entirely to the change in the route of Highway 80. The statistics introduced by appellant show that there was a drop of 61.7% of traffic along the old route as between 1950 and 1951. There was a nominal increase in 1952. Thus, the trial court was fully justified in finding that not more than 50% of this particular loss, occurring after June 1, 1952, should be attributed to this change in route, and that the admitted nuisance accounted for 25% of the loss. Our opinion is modified by striking the words, "That is the month the nuisance was created." As modified the opinion stands, and the motion for rehearing is

Denied.