George W. GIBBS and Kathleen I. Gibbs, Appellants,

v.

Laurie W. TOMLINSON, District Director of Internal Revenue for the District of Florida, Appellee.

No. 22048.

United States Court of Appeals Fifth Circuit.

June 14, 1966.

Chester Bedell, C. Harris Dittmar, William T. Rogers, Thomas C. O'Bannon, Jacksonville, Fla., for appellants, Donahoo & Rogers, Bedell, Bedell, Dittmar & Smith, Jacksonville, Fla., of counsel.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Tampa, Fla., James H. Walsh, Asst. U. S. Atty., Jacksonville, Fla., Melva M. Graney, Donald W. Williamson, Jr., Attys., Dept. of Justice, Washington, D. C., John B. Jones, Jr., Acting Asst. Atty. Gen., Meyer Rothwacks, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before JONES and BELL, Circuit Judges, and JOHNSON, District Judge.

GRIFFIN B. BELL, Circuit Judge:

The District Director of the Internal Revenue Service assessed additional taxes, penalties, interest, and lien filing fees against George W. Gibbs, Sr., and Kathleen I. Gibbs [1] on their 1960 income tax return. Appellants paid these sums and sued for a refund in the District Court. Following an adverse determination by the trial judge, appellants appealed.

Taxpayer and his son, George Gibbs, Jr., each owned an undivided one half interest in certain river front property in Jacksonville, Florida. Contiguous real property was owned by Gateway Building & Supply Company, which was also owned by taxpayer and Mr. Gibbs, Jr. In the spring of 1960, a portion of the joint property was leased to the Erie & St. Lawrence Corporation for a period of ten years. In accordance with the lease, the owners were to make certain improvements and alterations on the property at their own expense. A contemporaneous agreement was made with Gibbs Corporation [2] wherein the Corporation agreed to make the required improvements and alterations. The corporation was to receive a down payment of $70,000 including the first two rental payments from Erie totaling $61,500. Also the corporation was to look exclusively to the rents from Erie for the remainder. The District Court found that this latter agreement was arranged only after Erie abandoned the lease a few months after it was made.

The books of Gibbs Corporation were adjusted in 1960, following the lease and construction contract, to present a more favorable corporate financial picture. Accounts payable to the taxpayer, about $260,000 on prior unconnected transactions, were debited to the extent of $345,-148 which represented the sales price of the improvements and alterations to be made on the leased property under the construction contract. Taxpayer's personal books which were kept in the accounting department of Gibbs Corporation were similarly adjusted to show an indebtedness to the corporation of $73,-821.71, and an asset, designated "lease hold improvements", of $345,148. It was undisputed that the work had not been done at the time of the adjustment and that the cost of the work was unknown. The work was simply "progressed" to improve the earnings of Gibbs Corporation and so that the corporation balance sheet would show less debt to taxpayer. The 1961 books of both the taxpayer and Gibbs Corporation reflected an accounts receivable from the taxpayer of $345,148, and taxpayer's books showed accounts receivable from his son and Gateway for one third of that amount each.

The court first assumed the validity of the $345,148 figure as the cost or sales price of the improvements and alterations. The court then found, based on the failure of taxpayer to deal at arms length with Gibbs Corporation together with the fact that the contract provision requiring the corporation to look to the Erie rentals for payment was not prepared until after Erie had abandoned the lease, that taxpayer was not to pay the sum due Gibbs Corporation on the contract. The court accordingly agreed with the District Director that a constructive dividend accrued to the taxpayer in the amount of one third of the cost of the improvements and alterations. Taxpayer's claim for repair expenses and his motion to set aside a negligence penalty were also denied.

I.

Taxpayer first contends that there was insufficient evidence to support the conclusion of a constructive dividend. In particular, taxpayer objects both to the finding that the taxpayer did not deal at arms length with the Gibbs Corporation and to the inference drawn there-

1. Kathleen I. Gibbs is a party to the suit only because a joint return was filed.

2. Taxpayer founded the Gibbs Corporation in 1908, but in 1960 transferred all but about 1% of the common stock and about $20,000 worth of the preferred stock to Mr. Gibbs, Jr., and Mr. Gibbs, III. Taxpayer remained as Chairman of the Board of Directors.

from—that taxpayer never intended to repay the corporation his portion of the $345,148 obligation.

Before proceeding to an analysis of these contentions, some initial observations on the law involved are appropriate. The crucial concept in finding a constructive dividend is that the corporation conferred an economic benefit on the stockholder without the expectation of repayment.[3] See Paramount-Richards Theatres v. Commissioner, 5 Cir., 1946, 153 F.2d 602; Sachs v. Commissioner, 8 Cir., 1960, 277 F.2d 879; Hash v. Commissioner, 4 Cir., 1959, 273 F.2d 248. These cases make it clear that this is so notwithstanding that the distribution is not recorded on the corporate books as such, or that it is not in proportion to the stockholder's interest, or even that some of the holders do not participate in its benefits. The motive or expressed intent of the corporation is not solely determinative, and constructive dividends may be found contrary to the expressed intent of the corporation. Also it is well settled that corporate payments in discharge of a taxpayer's personal debts and liabilities are in the nature of constructive dividends. See Sachs v. Commissioner, supra; Hash v. Commissioner, supra.

The determination of when the obligation is no longer owing or whether it was to be paid is, of course, a question of fact to be resolved by the trial judge. Such findings will not be set aside unless they are without substantial evidence to support them, or the court misapprehended the effect of the evidence, or whether on reviewing the entire evidence the court is left with the definite and firm conviction that a mistake has been committed. Galena Oaks Corporation v. Scofield, 5 Cir., 1954, 218 F.2d 217; Western Cottonoil Co. v. Hodges, 5 Cir., 1954, 218 F.2d 158. And, it is important to note that the taxpayer carries the

burden in the trial court of establishing the validity of his claim for a tax refund. Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623.

Here the crucial consideration with regard to whether a dividend resulted to taxpayer is whether it was intended that taxpayer was to pay the corporation for the work. Also important is the effect of the abandonment of the lease by Erie, when it went out of business on the cancellation of the debt. The construction contract was decidedly to the disadvantage of the Gibbs Corporation in that it assumed the whole risk of loss from a default by Erie. We think the trial court properly inferred from this agreement a lack of intent to pay the corporation for the improvements and alterations. This point is supported by the finding that the provision of the construction contract requiring Gibbs Corporation to look to the rentals for payment was not included in the contract until 1961 when Erie had abandoned the lease. It is supported also by the fact of the almost complete disregard of the corporate entity of Gibbs Corporation by taxpayer and his son in the kiting transaction accomplished by "progressing" the work under the contract on the books of the corporation and the taxpayer.

We hold that the finding of a constructive dividend was not clearly erroneous. The question as to the amount of the dividend is quite another matter.

### II.

Taxpayer asserts three separate grounds to demonstrate that the District Court erred in determining the amount of the dividend. First, he asserts the argument that the amount of the dividend should have been determined by the increase in the fair market value of the property from the alterations and improvements. The rule is that the amount of income from the cancellation

---

3. § 61 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 61, provides that "gross income means all income from whatever source derived, including * * *

[d]ividends." § 316(a) defines a dividend as any distribution of property made by a corporation out of earnings and profits.

of indebtedness will be determined, in the normal case such as this is, by reference to the face amount of the obligation, and the actual value of the indebtedness will not be considered. See Mertens, Law of Federal Income Taxation, § 11.19; Spear Box Co. v. Commissioner, 2 Cir., 1950, 182 F.2d 844. This ground is thus without merit.

There may or may not be ultimate merit in the other grounds urged by the taxpayer. This will depend upon the full development of the facts on remand. The District Court seems to have assumed that $345,148 was the sales price of the work under the construction contract. However, a careful study of the record discloses no evidence to support such a finding. The books did reflect the figure but the evidence is undisputed that it was a fabricated or fictitious figure used for the purpose of the kiting arrangement. This activity may have been fraudulent, and even in violation of law but this case involves only the question of what dividend for federal income tax purposes the taxpayer received as a result of the alterations and improvements on his property by the corporation.

The Director relied on the $345,148 entry on the books of the corporation and those of the taxpayer, and also on the note given therefor as an evidentiary basis for the amount of the dividend. The District Court, by way of a finding of fact, simply stated that "The landowners caused Gibbs Corporation to make the necessary improvements at a total cost of $345,148.00." There was evidence to the contrary even over and above the undisputed purpose and design to kite. For example, at one point the testimony was that the sales price by the corporation for the work under the contract was to be cost plus 20%. The corporation minutes show cost plus at least 20%. The construction contract provides for a price based only on cost. There was testimony by Mr. Gibbs, Jr. that the cost to the corporation was between $65,000 and $70,000. Journal entries from the corporation's books were introduced which showed one entry of $53,-677.46 for cost and profit, and another in the amount of $136,159.68 as cost to which no profit had been added.

It seems plain from the whole record that the $345,148 figure was fictional and that it did not reflect the true dividend. It was fabricated for another purpose entirely; to improve the financial status of the corporation. The finding in question is a pure conclusion of fact unsupported by underlying fact findings which would demonstrate the true total sales price. All in all, we are of the definite and firm conviction that a mistake has been committed as to the amount of the dividend. Galena Oaks Corporation v. Scofield, supra; Western Cottonoil Co. v. Hodges, supra.

To avoid any chance of an unjust result, the judgment will be reversed and the case remanded to the District Court for the limited purpose of redetermining the amount of the constructive dividend. It should be based on the sales price of the alterations and the improvements less payments made, if any. Cf. Peerless Insurance Company v. Bailey Mortgage Company, 5 Cir., 1965, 345 F.2d 14, 17, for procedure on remand where the issue is limited to a specific question. The record discloses that the dominant question on the trial was whether there was a constructive dividend in fact. The amount of the dividend seems to have been caught up in the main question and given little consideration. The trial having ended in a decision adverse to the taxpayer on the dividend question, the whole tenor of the case then changed into one where the amount of the dividend assumed great importance. However, there was no reconsideration of the matter and ordinarily the taxpayer would be bound. Nevertheless, in circumstances of this case, where it seems clear that the amount of the dividend on which the judgment is based is incorrect, reconsideration by the District Court is indicated.

The third ground of the basis of the attack on the amount of the dividend rests on the failure to reduce the amount

of the dividend by the amount of $70,000. The contract called for a down payment to Gibbs Corporation in the sum of $70,-000. This sum was to be made up of two rental payments totaling $61,250 plus an additional sum sufficient to make the total of $70,000. The rental payments were made; one in the amount of $31,-250 and the other in the amount of $30,-000. The checks were made payable to Mr. Gibbs, Jr. and were deposited to his personal account. The first was in the amount of $31,250 and on the same day he issued two personal checks totaling $40,000 to the corporation. He testified that these were in partial discharge of the $70,000 down payment. The other rental payment was made some three months later by check in the amount of $30,000, and it was also deposited to the account of Mr. Gibbs, Jr. About ten days later he issued his personal check in the amount of $20,000 to the corporation, and he testified that he instructed the corporation to charge his personal drawing account with an additional $10,-000 so as to cover the balance due on the $70,000 down payment. His testimony was undisputed. The District Court found that these payments were not charged against the construction account. It is true that the books did not reflect these payments as made. The entire $345,148 was still owing at the end of 1960, several months after the payments. There is, however, an entry of $70,000 in July 1961 which is said to cover the payments but the District Court was satisfied that the $70,000 was not in fact paid to the corporation on the construction contract. The entire question of what the sales price and thus dividend was is to be reconsidered on remand. We think that in order to avoid another possible mistake, the court should also reconsider the question of whether the $70,000 down payment or any part thereof was in fact paid to the corporation. The judgment will be vacated and the case remanded to this extent so that this question may also be reconsidered.

## III.

Taxpayer further contends that he is entitled to a deduction in the amount of $13,277.90 for repairs to the leased property.[4] The trial court found that taxpayer failed to establish all the necessary elements of a repair expense. These requirements were stated by this court in Jones v. Commissioner, 5 Cir., 1957, 242 F.2d 616, 619, as follows:

A repair is an expenditure [which] * * * merely keeps the property in an operating condition over its probable useful life for the uses for which it was acquired. Expenditures for that purpose are distinguishable from those for replacements, alterations, improvements or additions which prolong the life of the property, increase its value, or make it adaptable to a different use.

This finding of the court is correct. The evidence, such as there was, indicated that the expenditures in question were for capital improvements.

## IV.

Finally, taxpayer asserts that he was improperly penalized under § 6653 (a), Internal Revenue Code of 1954, 26 U.S.C.,[5] for negligence in the preparation of his 1960 return. The assessment of a penalty for negligence is presumed to be correct and the burden is on the taxpayer to show that it is wrong. Boynton v. Pedrick, 2 Cir., 1955, 228 F.2d 745, cert. den., 351 U.S. 938, 76 S.Ct. 835, 100 L.Ed. 1465; Cleveland Chiropractic College v. Commissioner, 8 Cir., 1963, 312 F.2d 203. The evidence amply supports

4. § 162, Internal Revenue Code of 1954, 26 U.S.C., provides: "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

5. § 6653(a) provides: "If *any part of any underpayment* (of certain specified taxes) * * * is due to negligence or intentional disregard of rules and regulations * * * there shall be added to the tax an amount equal to 5 percent of the underpayment." (Emphasis added)

the trial court's finding that taxpayer's failure to report certain items on his income tax form was due to negligence.

Affirmed in part; reversed in part; vacated in part; remanded for further consideration not inconsistent herewith.