HELGESEN PROPERTIES, INC. (formerly HELGESTEEL CORPORATION), Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DONALD W. HELGESEN and JOAN H. HELGESEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Helgesen Properties, Inc. v. Commissioner
Docket Nos. 11763-81, 11764-81.
United States Tax Court
T.C. Memo 1983-771; 1983 Tax Ct. Memo LEXIS 18; 47 T.C.M. (CCH) 751; T.C.M. (RIA) 83771; December 22, 1983. *18 P owned 95 percent of the stock of H. During 1974, H constructed an addition to a building on land owned by P. Through inadvertence, the full costs of the building addition were not charged to P. Held, P intended to pay the full costs of the addition; the undercharges were not a constructive dividend to him. Held, further, the amount of the undercharges constitutes an account receivable includable in the gross receipts of H, and its net operating loss must be reduced accordingly. Thomas G. Ragatz and John S. Robison, for the petitioners. Joseph R. Peters, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner *19 determined the following deficiencies in the petitioners' Federal income taxes: Docket No.
Taxable Year Ended
Deficiency
11763-81
Sept. 30, 1975
$13,980.00
Sept. 30, 1976
591.00
11764-81
Dec. 31, 1974
115,317.00
Dec. 31, 1975
14,393.00
Dec. 31, 1976
3,119.00
Dec. 31, 1977
676.00
After concessions by the parties, the issues remaining for decision are: (1) Whether the petitioner Donald W. Helgesen received a constructive dividend from petitioner Helgesen Properties, Inc., by reason of its failure to charge him all the costs incurred by it in constructing a building addition for him in 1974; and (2) whether the corporation overstated its net operating loss for its taxable year ended September 30, 1975, as a result of the undercharges. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Donald W. and Joan H. Helgesen, husband and wife, were legal residents of Janesville, Wis., at the time they filed their petition. They filed their joint Federal income tax returns for 1974, 1975, 1976, and 1977 with the Internal Revenue Service Center, Kansas City, Mo. The petitioner, Helgesen Properties, *20 Inc. (formerly Helgesteel Corporation) (the corporation), is a Wisconsin corporation having its principal office in Janesville, Wis., at the time it filed its petition. The corporation filed corporate Federal income tax returns for its taxable years ended September 30, 1975, and September 30, 1976, with the Internal Revenue Service Center, Kansas City, Mo. Mr. Helgesen will sometimes be referred to as the petitioner. Mr. Helgesen's formal education ended after the eight grade, and he has no formal accounting or business training. He began in business selling cars, farm implements, appliances, and metal farm buildings, but by the early 1960s, he started to specialize in construction. The corporation was formed in 1946; during 1974, Mr. Helgesen was its president and owned at least 95 percent of its stock. The principal business of the corporation during 1974 was the construction of commercial and industrial steel buildings. The corporation erected buildings for Mr. Helgesen as well as for unrelated customers. Mr. Helgesen was not personally involved in the charging of costs to any construction project, although he occasionally examined cost records for particular jobs. The *21 corporation charged the costs of materials and labor (direct costs) used on a particular project in the same manner whether the project was built for Mr. Helgesen or an unrelated customer. The corporation has never charged Mr. Helgesen with less than full direct costs on any project built for him, with the exception of the 1974 building addition to be discussed. In connection with an examination of returns for an earlier year, the IRS took the position that the corporation should include a portion of its overhead (i.e., indirect costs such as depreciation, interest, property tax, or officers' salaries, which are not directly attributable to any one project) in the charges to Mr. Helgesen's projects. Mr. Helgesen and the corporation agreed to include such indirect costs, and thereafter, it became corporate policy, accepted and applied by Mr. Helgesen, Paul Ramsey, the corporate vice president, and Ottis Wagner, the internal accountant, to include such indirect costs in the amounts charged to Mr. Helgesen. The corporation maintained a job card for each project, whether the job was undertaken for Mr. Helgesen or another customer. The corporate bookkeepers entered the direct costs *22 attributable to each job on the appropriate card and used the cards to compute monthly billings. When the corporation did a job for Mr. Helgesen, it did not mail him a bill; instead, the charges were set up as a receivable due from him. The corporate books included an account reflecting any amounts "due to" or "due from" Mr. Helgesen. Mr. Helgesen made payments into the corporation from time to time during 1974 which were credited against the receivable balance, and in 1976, he paid in full the amounts due from him. The amounts advanced by Mr. Helgesen to the corporation were usually secured by him from construction lenders. During 1974, Mr. Helgesen had approximately $100,000 of an unused mortgage commitment and a bank line of credit available to finance his projects. An outside accounting firm was responsible for reviewing the closing of cost accounts related to completed projects. At such time, the accountants were to review the direct costs and calculate the indirect costs to be charged to the project. Mr. Helgesen also relied on the accounting firm for the preparation of his tax returns. Since 1968, Mr. Helgesen has owned a piece of land at 1809 South Adel Street *23 in Janvesville. During 1974, the property was improved and leased to the Hough Manufacturing Co. (Hough), which was not related to Mr. Helgesen. In 1973, Mr. Helgesen entered into an unwritten contract with the corporation whereby the corporation promised to build an addition to the Hough building. The corporation and Mr. Helgesen had entered into unwritten construction agreements in the past because Mr. Helgesen favored the flexibility provided by such contracts. The Hough addition was substantially completed by the fall of 1974, during Mr. Helgesen's 1974 taxable year, and during the corporation's taxable year ended September 30, 1975. The corporation incurred direct costs of $766,389.41 in the construction of the addition. During the summer of 1975, Mr. Wagner joined the corporation's staff as an inhouse accountant. Soon after his arrival, he made the accounting entries to close the account for the Hough addition. At the time such account was closed, it had been charged with direct costs of only $654,748, and it had not been charged with any indirect costs. Mr. Wagner was unaware of the undercharges when he closed the Hough addition account. The outside accounting firm *24 reviewed the closing entries and made no changes. Mr. Helgesen believed that he had paid all the costs of the Hough addition during the construction or shortly thereafter. During the summer of 1979, he learned that he had not. In his notice of deficiency in docket No. 11764-81, the Commissioner determined, in part, that Mr. Helgesen received a constructive dividend of $154,369 from the corporation during 1974. The Commissioner concluded that the corporation incurred $111,641 of direct costs and $42,728 of indirect costs in the construction of the Hough addition for Mr. Helgesen for which he was not charged. [1] In his notice of deficiency in docket No. 11763-81, the Commissioner disallowed the corporation's loss on the Hough addition and increased the corporation's gross receipts for its taxable year ended September 30, 1975, by $154,369. OPINION The first issue for decision is whether the petitioner received a constructive dividend from the corporation by reason of the corporation's failure *25 to charge him all the costs that it incurred in building the Hough addition. When a shareholder has a corporation build property on his behalf, the costs incurred by the corporation may constitute a constructive dividend to the shareholder if the shareholder intended the property to be his and if the shareholder had no intention of repaying the corporation. Magnon v. Commissioner,73 T.C. 980, 994 (1980); Estate of Clarke v. Commissioner,54 T.C. 1149, 1161 (1970); Benes v. Commissioner,42 T.C. 358 379 (1964), affd. per curiam 355 F.2d 929 (6th Cir. 1966). The petitioner always intended the Hough addition to be his property; the question herein is whether he always intended to repay the corporation for all the costs of the Hough addition. The issue is one of fact. Loftin and Woodard, Inc. v. United States,577 F.2d 1206, 1215 (5th Cir. 1978); Gibbs v. Tomlinson,362 F.2d 394 (5th Cir. 1966). Several factors have been considered in determining whether a shareholder intended to repay his corporation for construction done on his behalf: whether the shareholder in fact paid any of the *26 costs during or upon completion of construction, whether the shareholder was financially able to repay the corporation, whether the project costs were treated in the same manner as the costs for projects built for others, whether the shareholder attempted to conceal records of project costs, and whether the construction contract essentially provided that the corporation is to bear the costs. Gibbs v. Tomlinson,362 F.2d at 397; Magnon v. Commissioner,73 T.C. at 995-996; Estate of Clarke v. Commissioner,54 T.C. at 1160-1161; Benes v. Commissioner,42 T.C. at 377-378. In the present case, we have found as a fact that the petitioner always intended to repay the corporation the total costs of the Hough addition. The petitioner did repay the corporation for a substantial portion of direct costs while the addition was being built. During 1974, his resources, including $100,000 of an unused mortgage commitment, were sufficient to enable him to repay the corporation completely. Additionally, both Mr. Wagner and Mr. Ramsey testified that during 1974 the policy of the corporation was to charge the petitioner's projects *27 for full direct costs and a portion of indirect costs in the same manner as any other project, and in fact, the petitioner was charged for such direct and indirect costs on all other projects built for him. The corporation maintained a job card for each project, including the Hough project. The corporation's bookkeepers entered the direct costs of each project on the appropriate card; the petitioner never interfered with the bookkeeping, nor did he order that costs for the Hough project be omitted or posted to other projects. The petitioner never attempted to conceal the cost records of the Hough project. The Hough project costs were debited to the petitioner's corporate account; his payments to the corporation were credited to this account. In summary, the Hough project was treated like any other project, except that its accounts were closed before all its costs were charged to the petitioner's account, and that premature closing of the Hough account without the inclusion of all costs was attributable to a mistake by the bookkeeper made without the knowledge of the petitioner. The Commissioner contends that the petitioner has failed to prove that the Hough project undercharges *28 were caused by inadvertence. Thus, the Commissioner concludes that his determination that the undercharges were a constructive dividend to the petitioner must stand. We do not agree. The petitioner has not wholly explained the mechanics of the alleged bookkeeping error, nor has either party introduced the Hough project records. However, the petitioner was a forthright and credible witness. His testimony was corroborated in all essential particulars by both Mr. Ramsey and Mr. Wagner, whose credibility was unimpugned. Furthermore, the petitioner's testimony was uncontroverted. Thus, the petitioner presented persuasive evidence in support of his position that he intended to pay the full charges for the Hough project and that the failure to charge him the full amount was due to a mistake by the bookkeeper. Finally, the Commissioner's agent audited the corporate books for 2 full years; we are reasonably certain that, had any documentary evidence contradicted the petitioner's story, the Commissioner would have produced it at trial. The revenue agent himself testified that he found no evidence that the undercharges resulted from anything other than an innocent error. We conclude that *29 the petitioner has sustained his burden of disproving the Commissioner's determination. Accordingly, we hold for the petitioner on this issue. [2]
The second issue for decision is whether the corporation overstated its net operating loss for its taxable year ended September 30, 1975, as a result of the undercharges. Apparently, when the Hough project account was closed, its full costs were included in cost of sales, but gross receipts only included those costs which had been charged to the petitioner's account. Gross receipts were understated by the amount of the undercharges, *30 and the corporation's net operating loss was overstated by the same amount. The Commissioner determined that recognition of the loss was precluded. Neither party argued the loss issue at trial or on brief; yet, it is apparently still in issue. The parties may have believed that holding for the petitioner on the first issue required a like holding on the present issue, but that is patently not so. Our holding on the first issue is that the undercharges constituted, in effect, an unrecorded receivable owing from the petitioner to the corporation for the Hough addition. The corporation did not incur a loss on the project; it merely failed to include such "receivable" due from the petitioner in its gross receipts. We conclude that the corporation understated its gross receipts and overstated its net operating loss by the amount of the undercharges. Accordingly, we sustain the Commissioner's determination on this issue. Decisions will be entered under Rule 155.
Footnotes
1. The Commissioner does not assert that any additional amount should be treated as a constructive dividend to reflect a markup for profit on the construction of the Hough addition.↩
2. Of course, if the corporation ultimately forgives the debt arising from the project undercharges, such forgiveness may constitute a distribution with respect to stock, taxable to Mr. Helgesen for the year in which it occurs. Sec. 61(a)(12), I.R.C. 1954; Shephard v. Commissioner,340 F.2d 27 (6th Cir. 1965), affg. per curiam a Memorandum Opinion of this Court; Wiese v. Commissioner,93 F.2d 921 (8th Cir. 1938), affg. 35 B.T.A. 701 (1937); Haber v. Commissioner,52 T.C. 255 (1969), affd. per curiam 422 F.2d 198↩ (5th Cir. 1970).