RAYMOND W. F. HUNT, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ELIZEBETH J. L. HUNT, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hunt v. Commissioner
Docket Nos. 7976-89, 8416-89
United States Tax Court
T.C. Memo 1991-566; 1991 Tax Ct. Memo LEXIS 614; 62 T.C.M. (CCH) 1238; T.C.M. (RIA) 91566; November 25, 1991, Filed *614 Decisions will be entered under Rule 155.
Robert W. Walker, for the petitioner in docket No. 7976-89. Gary P. Smith, for the petitioner in docket No. 8416-89. Linda J. Wise, for the respondent. FAY, Judge. FAY
MEMORANDUM OPINION By statutory notice of deficiency, respondent determined deficiencies in and additions to petitioners' Federal income taxes in the following amounts: Additions to tax
Year
Deficiency
Sec. 6661(a) [1]
1981
$ 20,260.01
--  1982
4,330.10
--  1985
7,442.21
$ 1,861.00
After concessions, the issues presented for our consideration are: 1. Whether $ 25,000 paid by a corporation in 1981 to purchase an interest in a limited partnership on behalf of petitioner, a shareholder of such corporation, constituted a loan or a constructive dividend. 2. Whether petitioner actually *615 or constructively received $ 10,000 in bonus income during 1982. 3. Whether petitioners' income for 1985 was understated by $ 23,011, the amount that was reallocated to petitioner after petitioners' small business corporation was disregarded for tax purposes. 4. Whether petitioners are liable for the addition to tax under section 6661(a) for the taxable year 1985. 5. Whether petitioner wife qualifies for relief from joint and several liability as an innocent spouse under the provisions of section 6013(e). For purposes of clarity, the findings of fact and opinion have been combined. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners Raymond W. F. Hunt (petitioner) and his wife Elizebeth J. L. Hunt (Mrs. Hunt) filed separate petitions in this matter which were consolidated for trial, briefing and opinion by joint motion filed with the Court on September 24, 1990. At the time the petitions were filed, both petitioner and Mrs. Hunt declared their legal residence to be in Florence, Alabama. Petitioner and Mrs. Hunt filed joint Federal income tax returns as cash basis taxpayers for the taxable years 1981, 1982, and 1985 with *616 the Internal Revenue Service in Atlanta, Georgia. Unreported Income: Issues 1, 2, and 3 Pentron Corp. (Pentron) was incorporated under the laws of the State of Georgia on September 25, 1979. Pentron was a broker-dealer in securities that syndicated limited partnerships and sold the limited partnership interests to investors. The securities offered were primarily interests in subsidized real estate housing in Alabama and Mississippi. Pentron adopted a fiscal year ending on September 30. On October 10, 1979, 2,500 shares of Pentron were issued to each of the following: Hunt
(Petitioner)
Richard D. Brackin
(Brackin)
Laurence R. Lager
(Lager)
James D. Ashmore
(Ashmore)
Clyde Ray, Jr.
(Ray)
The purchase price for each 2,500 shares was $ 25,000. One hundred dollars of such purchase price was paid in cash. The remaining $ 24,900 was recorded on Pentron's records as a debt owed to Pentron, i.e., an increase in the shareholder receivable schedule. On July 1, 1980, Pentron authorized the issuance of an additional 250,000 shares of its stock to be offered for sale to shareholders of record on October 31, 1979, who had fully paid their debt to Pentron in cash by July *617 15, 1980. Petitioner, Brackin, Ashmore, and Ray borrowed $ 99,600 from Southern Bank and paid their debt arising from the purchase of their stock. None of the shareholders of Pentron made any payments on amounts borrowed from Southern Bank. Rather, Pentron made all the payments and recorded such payments on its books as increases to the shareholder receivables schedule. On July 18, 1980, petitioner, Brackin, Ashmore, and Ray each purchased an additional 59,375 shares of Pentron for $ 5,937.50. The entire purchase price was entered into Pentron's records as shareholder receivables; no cash was paid. On October 31, 1980, Lager's stock was redeemed by Pentron. On June 15, 1981, Ashmore purchased Brackin's stock, and Pentron redeemed Brackin's stock from Ashmore. In 1982, William L. Phipps (Phipps) acquired a minority interest in Pentron. In 1982, U.S. Coin Exchange, Inc. (U.S. Coin) acquired some stock in Pentron. From the above transactions it becomes apparent that from June 15, 1981, through December 31, 1981, there were only three shareholders of Pentron, each holding identical interests, i.e., petitioner, Ashmore, and Ray, each holding 61,875 shares. From 1981 through 1985, *618 petitioner, Ashmore, and Ray served on the board of directors for Pentron. During that period, the board of directors consisted of no more than four members. ETC., Ltd. (ETC.), was a limited partnership formed to engage in electronics research and development. Pentron was the general partner of ETC. On December 31, 1981, [2] petitioner, Ashmore, and Ray each acquired an interest in ETC. The purchase price of $ 25,000 for each man's interest was paid by Pentron. Petitioner executed a promissory note in the amount of $ 25,000 payable to Pentron on demand (demand note). The demand note was secured by a pledge of petitioner's underlying stock in Pentron. The demand note called for interest at the rate of 10 percent per year compounded semiannually. Petitioner *619 was not only a shareholder and director of Pentron for all years at issue, but he was president of Pentron as well until some time in 1985. For 1982, in addition to his salary, he earned a $ 10,000 bonus [3] in connection with Microbion Corp. [4] However, this $ 10,000 amount was not paid directly to petitioner. Instead, Pentron applied this amount to a debt owed by petitioner to another partnership. Lillian Uhlman (Uhlman), the bookkeeper for Pentron from startup until it ceased operations, recorded petitioner's bonuses for 1982 on a chart. This chart includes the following entry: Payment Due
Paid
Microbion Corp.
$ 10,000
$ 10,000
(applied to partnership payables)
Petitioner *620 did not include the $ 10,000 bonus earned from Pentron in connection with Microbion Corp. on his 1982 income tax return. HFP Associates, Inc. (HFP), was incorporated under the laws of the State of Alabama on October 5, 1984. In December of 1984, HFP filed a small business corporation election, Form 2553. On this form petitioner reported that HFP had 1,000 shares issued and outstanding, which were equally divided between petitioner and Mrs. Hunt. On January 1, 1985, HFP and Pentron entered into a consulting agreement whereby Pentron would pay HFP $ 25,000 annually in exchange for consulting services to be provided by HFP. In connection with this consulting arrangement, Uhlman issued Form 1099 to HFP in the amount of $ 25,000. Later, she issued a corrected Form 1099 to HFP in the amount of $ 22,917. [5]
*621 On Form 1120S, U.S. Income Tax Return for an S Corporation, for 1985, HFP reported gross receipts of $ 23,011. Of this amount, petitioner and Mrs. Hunt reported only $ 10,772 as a pass-through in their 1985 joint income tax return. The difference in amounts is attributable to the following deductions HFP claimed for 1985: Gross Receipts
$ 23,011 Less:
Salaries
<6,000>
Taxes
<527>
Depreciation
<3,601>
Other deductions
<2,111>
Taxable income as reported
$ 10,772 HFP's 1985 return was examined by the IRS. The revenue agent determined that HFP should be disregarded for income tax purposes. Petitioner agreed with the agent's determination and executed a Form 4605 [6] in which HFP's reported income of $ 10,772 was reduced to zero. Petitioner terminated his employment with Pentron on June 30, 1986, and on July 18, 1986, received a promissory note from Pentron *622 in the amount of $ 107,166 (Pentron note). The amount of the Pentron note was arrived at by the netting of amounts petitioner owed Pentron against amounts Pentron allegedly owed petitioner. The Pentron note was given to petitioner at a time when Pentron's shares were worthless, and, as of the date of trial, petitioner had not received any payment on this note. Constructive Dividend -- 1981: Issue 1 The first issue to be decided is whether the $ 25,000 advanced by Pentron in 1981 for the purchase of petitioner's interest in a limited partnership, ETC., was a loan [7] as petitioners assert or a constructive dividend, as respondent contends. The fact that the transaction in question did not involve any direct transfer of actual funds from Pentron to petitioner but rather the payment of the purchase price for petitioner's *623 interest in ETC. is immaterial. The crucial concept in finding a constructive dividend is that the corporation conferred an economic benefit on the stockholder without expectation of repayment. See Gibbs v. Tomlinson, 362 F.2d 394, 397 (5th Cir. 1966). Petitioner does not dispute that he derived an economic benefit from his ownership interest in ETC.; thus, petitioner will realize taxable income of $ 25,000 unless he can establish that such amount constitutes a loan. Courts have considered various factors when deciding whether certain transactions are constructive dividends or loans; however, none of the factors, standing alone, is determinative. [8] Petitioners bear the burden of proving by a preponderance of evidence that the purchase of the interest in ETC. on petitioner's behalf constituted a loan and not a dividend. Baird v. Commissioner, 25 T.C. 387, 396 (1955); Rule 142(a).
*624 We consider as an essential feature of this transaction that at the time Pentron made the payment for petitioner's interest in ETC. (December 31, 1981), all of Pentron's issued and outstanding stock was held equally by petitioner, Ashmore, and Ray. [9] These three equal shareholders received identical interests in ETC. Because equal distributions were made to equal shareholders, the distributions were, as such, proportional. In a multishareholder context, distributions from a corporation in proportion to stock ownership is an indicator of dividends. Pierce v. Commissioner, 61 T.C. 424, 431 (1974); Haber v. Commissioner, 52 T.C. 255, 266 (1969), affd. 422 F.2d 198 (5th Cir. 1970). *625 Another factor was that there was no fixed time or plan for repayment of principal or interest on the demand note. Baird v. Commissioner, T.C. Memo 1982-220. The $ 25,000 demand note given to Pentron by petitioner called for 10-percent interest per year compounded semiannually. Petitioner, however, did not present any evidence that interest on the note was, in fact, paid by him or accrued by Pentron. From this we conclude that no interest was paid, which belies any real creditor-debtor relationship or any intention to create such a relationship. Saigh v. Commissioner, 36 T.C. 395, 421 (1961). The fact that the note itself was payable on demand reinforces treating the amount as a dividend and not a bona fide loan. Saigh v. Commissioner, supra at 420. At all relevant times, petitioner, Ashmore, and Ray were, as a group, in a position to control the activities of Pentron, which included the ability to declare dividends, approve loans, oversee recordkeeping, and enforce collection of outstanding debts. The facts of this case indicate that petitioner, as part of this group of controlling shareholders, did not have *626 a good faith intent to repay the disbursed funds, nor did Pentron have a good faith intent to enforce the alleged debt. Such circumstances suggest the advanced sums were dividends. Beaver v. Commissioner, 55 T.C. 85, 91 (1970). Petitioner argues that Pentron's purchase of petitioner's interest in ETC. was a loan. In support of his position, petitioner presented physical evidence of indebtedness, i.e., the demand note. However, we find Pentron's records, as a whole, were scrambled and confused as was the testimony of Uhlman. Additionally, we do not find petitioner's testimony credible. In these circumstances and in view of the fact that Pentron was closely held, we place minimal evidentiary value on the demand note. See Alterman Foods, Inc. v. United States, 505 F.2d 873, 879 (5th Cir. 1974). Also in support of his position, petitioner contends that he had secured the loan by pledging the stock he held in Pentron. The record reflects that petitioner's actual investment in Pentron was limited to $ 100, an insignificant security to Pentron. Assuming, arguendo, that the security was valuable, "the security given was of no moment since, *627 here again, the decision to enforce payment and take the stock rested in the same parties." Saigh v. Commissioner, supra at 420. Petition finally maintains that he "repaid" the loan to Pentron, upon his receipt of the Pentron note for $ 107,166. Petitioner argues that the Pentron note represents the excess of the amounts Pentron owed him over the sums that he owed Pentron. We disagree. We find that the amounts Pentron owed petitioner were not adequately substantiated. Therefore, we hold that petitioner did not repay Pentron at the time he terminated his employment with Pentron. From all the facts before us and not relying on any single factor including the testimony of petitioners to which we accord little weight, we hold that Pentron's purchase of petitioner's interest in ETC. represented constructive dividends with respect to their stock and not bona fide loans. Actual Receipt -- 1982: Issue 2 As applied to cash basis taxpayers (which petitioner clearly is), "Gains, profits, and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer." Sec. 1.451-1(a), Income Tax *628 Regs. (Emphasis added.) The evidence presented in this case indicates that the Microbion bonus of $ 10,000 earned in 1982 was applied by Pentron to discharge debts owed by petitioner to certain limited partnerships. Therefore, we hold that petitioner actually "received" the $ 10,000 bonus when the debt owed by petitioner was discharged by Pentron. Helvering v. Horst, 311 U.S. 112, 85 L. Ed. 75, 61 S. Ct. 144 (1940); Old Colony Trust v. Commissioner, 279 U.S. 716, 73 L. Ed. 918, 49 S. Ct. 499 (1929). Reallocation Income -- 1985: Issue 3 Substantial confusion prevailed at the trial and in subsequent briefs filed by the parties regarding the nature of the $ 23,011 [10] adjustment made by respondent in the notice of deficiency for the 1985 tax year. Respondent argues, we think correctly, that the adjustment *629 for 1985 stems from the reallocation of income from HFP to petitioners individually. For 1985, HFP reported $ 23,011 in consulting fees pursuant to the consulting agreement entered into between HFP and Pentron. Petitioners' joint Federal income tax return included only $ 10,772 as a pass-through of the amounts paid to HFP. The lesser amount reported by petitioners as a pass-through on their joint income tax return for 1985 is attributable to deductions for salary, taxes, depreciation, and other miscellaneous deductions taken by HFP. Pursuant to the examination conducted by respondent, the parties agreed to ignore HFP for tax purposes (thus disallowing all deductions taken by HFP) and reallocate HFP's income to petitioner individually. As a consequence of this, it follows that there is no $ 10,772 pass-through to petitioners from HFP in 1985. Instead, the entire amount originally reported by HFP ($ 23,011) is taxable directly to petitioners for 1985. Petitioner, however, argues that the adjustment in respondent's statutory notice of deficiency for 1985 is unclear because it fails to explicitly mention the reallocation from HFP to petitioner. We find petitioner's argument lacks *630 merit. We hold that the adjustment for 1985 as set out in the statutory notice of deficiency, although not a model of clarity, pertains to the reallocation of income from HFP to petitioner. By stipulation, petitioner agreed to disregard HFP for tax purposes, and, consequently, he must now include in income the full $ 23,011. Petitioners, additionally, raise in their pleadings a separate and distinct overpayment claim concerning $ 25,000 actually included in their 1985 joint Federal income tax return, Form 1040, line 22, as "commissions-Pentron." We have reviewed petitioners' argument and find it meritless. Section 6661 Addition to Tax -- 1985: Issue 4 Section 6661 provides for an addition to income tax equal to 25 percent of the amount of any underpayment attributable to a "substantial understatement." An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Respondent has determined that petitioner and Mrs. Hunt are liable for an addition to tax pursuant to section 6661 for 1985. Petitioner and Mrs. Hunt have presented no evidence to the contrary. Therefore, petitioners are liable for the addition *631 to tax under section 6661 for such year. Innocent Spouse: Issue 5 When a husband and wife file a joint return, each is jointly and severally liable for the amount of tax due. Sec. 6013(d)(3). However, section 6013(e) relieves an innocent spouse of joint liability if she [11] proves that: (1) A joint return was made for the taxable year; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) she did not know, and had no reason to know, of the substantial understatement when she signed the return; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold her liable for the deficiency in income tax attributable to such substantial understatement. Sec. 6013(e)(1), as amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802. The spouse claiming entitlement *632 to innocent spouse relief has the burden of proving that she has satisfied each statutory requirement of section 6013(e); a failure to prove any one of the statutory elements will prevent her from qualifying for relief. Bokum v. Commissioner, 94 T.C. 126, 138 (1990); Rule 142(a). The parties agree that petitioners filed joint Federal income tax returns for 1981, 1982, and 1985, and that on each of these returns there is a substantial understatement of tax attributable to a grossly erroneous item of petitioner, i.e., the constructive dividend for 1982, and the actual receipt for 1982 and the reallocation income for 1985. These items were all respectively omitted from their 1981, 1982, and 1985 joint Federal income tax returns. Therefore, the first two requirements of section 6013(e)(1) are met. The third requirement Mrs. Hunt must meet is that she did not know, and had no reason to know of, the substantial understatement when she signed the return. The court in Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. a Memorandum Opinion of this Court, [12] held that a spouse has "reason to know" if such spouse had sufficient *633 knowledge of the underlying facts such that a reasonably prudent person under similar circumstances would seriously question the accuracy of the tax liability as reported.
We find that Mrs. Hunt did not know, and had no reason to know, that there was any understatement of tax in her 1981 and 1982 joint Federal income tax returns. For these years, Mrs. Hunt had no knowledge of her husband's business or investments generally or specific knowledge of any of the transactions involving any partnership items or transactions involving Pentron. Mrs. Hunt maintained a separate household checking account funded by petitioner from which she paid for normal household expenses that over time appear to be level. She did not incur any unusual or lavish expenditures. On this record, we do not find that Mrs. Hunt as to the years 1981 and 1982 had sufficient knowledge of the facts such that a reasonably prudent person in Mrs. Hunt's position would know of the understatements for such years. *634 Mrs. Hunt's involvement in the family's business and financial affairs during 1985 was significantly greater than in 1981 or 1982. Most of the adjustments to petitioners' return for 1985 result from the reallocation of income reported on the return of HFP. Mrs. Hunt was the only employee of HFP, deriving $ 500 per month for performing such duties as making quarterly Social Security payments and forwarding all mailings required by the IRS. In addition, she had signatory authority on HFP's bank account from which she made deposits and wrote checks, including a $ 1,000 pledge to First Presbyterian Church. All this work activity was done by Mrs. Hunt at home, because HFP had no separate business address. Yet despite all this, Mrs. Hunt claims to have no knowledge as to what HFP did to earn the consulting fee from Pentron. Because Mrs. Hunt cannot simply turn away from facts that might give reason to know of unreported income, we find that Mrs. Hunt had reason to know that there was a substantial understatement in the 1985 joint Federal income tax return. Sec. 6013(e)(1)(C); Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). Finally, Mrs. Hunt as the taxpayer *635 claiming relief as an innocent spouse must show that it would be inequitable, under all the facts and circumstances, to hold her liable for the tax deficiencies. Sec. 6013(e)(1(D). Based on the record as a whole, we find that for the years 1981 and 1982, it would be inequitable to hold Mrs. Hunt liable for the deficiency in tax for those years. Specifically, she did not earn nor did she benefit directly or indirectly from the items omitted from gross income, given that normal support is not considered a significant benefit for purposes of this determination, and Mrs. Hunt is now seeking divorce [13] from petitioner. Sec. 1.6013-5(b), Income Tax Regs.
Mrs. Hunt will be accorded relief as an innocent spouse only for the items of omitted income before us involving deficiencies for 1981 and 1982, which are by definition grossly erroneous. Sec. 6013(e)(2)(A). Understatements of tax attributable *636 to claims of deduction, credit, or basis are grossly erroneous items only if such claims have no basis in fact or law. Sec. 6013(e)(2)(B). Mrs. Hunt did not present sufficient evidence to show that other adjusted deductions or credit, if any, were grossly erroneous. Decisions will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The record is unclear as to the date of purchase of each shareholder's interest. Therefore, we find the date of the purchase of each shareholder's interest to be the date that Pentron recorded the purchase as an increase in the shareholder receivable account.↩
3. Pentron treated petitioner as an independent contractor when it came to paying him his bonuses and director's fees. Therefore, Pentron submitted Form 1099, in addition to Form W-2, on behalf of petitioner annually.↩
4. The record does not disclose how petitioner actually earned the bonus associated with Microbion Corporation.↩
5. No explanation was made at trial or on brief why Uhlman issued a corrected Form 1099 to HFP for $ 22,917. By stipulation filed on September 24, 1990, the parties agree that the correct amount was $ 23,011.63 ($ 23,011).↩
6. Examination changes - partnerships, fiduciaries, small business corporations, and domestic international sales corporations.↩
7. The term "loan" is used throughout this opinion for clarity only. However, it does not follow that Pentron's payment for the interest in ETC. on behalf of petitioner was a bona fide loan.↩
8. The factors include: (1) The extent to which the shareholder controls the corporation; (2) the earnings and dividend history of the corporation; (3) the magnitude of the advances; (4) whether a ceiling existed to limit the amount the corporation advanced; (5) whether or not security was given for the loan; (6) whether there was a set maturity date; (7) whether the corporation ever undertook to force repayment; (8) whether the shareholder was in a position to repay the advances; and (9) whether there was any indication the shareholder attempted to repay the advances. Alterman Foods, Inc. v. Commissioner, 505 F.2d 873, 877↩ n.7 (5th Cir. 1974).
9. Petitioners in their reply brief argue that at all times there were at least one and sometimes two minority shareholders of Pentron. However, the record clearly discloses that as of the relevant transaction date, December 31, 1981, there were only three equal shareholders. It was not until 1982 when Phipps and U.S. Coin acquired an interest in Pentron. The only other shareholders, Lager and Brackin, had their stock redeemed on October 31, 1980, and June 15, 1981, respectively, prior↩ to the date of the transaction in question, December 31, 1981.
10. The original adjustment made by respondent in the notice of deficiency for 1985 was $ 25,000. By stipulation filed on September 24, 1990, the parties agree that the correct adjustment was $ 23,011. See supra↩ note 5.
11. Because it is Mrs. Hunt who is seeking innocent spouse relief, we will use the term "she" for simplicity.↩
12. T.C. Memo 1988-63↩.
13. Mrs. Hunt's petition indicates that she has filed a petition for divorce in the Circuit Court of Lauderdale County, Alabama.↩