JUSTICE TRIEWEILER
specially concurring in part and dissenting in part.
I concur with the majority’s conclusion that the District Court abused its discretion by failing to consider the social worker’s report and recommendations. The impact of that failure is apparent from the District Court’s Finding of Fact No. 4 to the effect that the children stated no preference for whom they would like to have as the primary *34 custodian. Sarah Seiler, the social worker, apparently discussed this question at length with both children. As a result of her conversations, she was able to state in her report the following finding:
Cody was interviewed twice and Shane once at Sandstone School. Both boys state that they want to continue to live with their father and are not concerned about changing schools. Cody and Shane love their mother and want to visit with her, but had criticism of her care for them. They both say that their mother sleeps a great deal while they visit and that she does not supervise them or set boundaries when they play outside. Cody even went so far as to say his mother was “acting weird lately”. Despite repeated attempts to play “devil’s advocate” with the boys, they were steadfast in their desire to stay with their father.
I dissent from that part of the majority opinion which concludes that the District Court’s decision to terminate joint custody was supported by substantial evidence.
Under § 40-4-219, MCA, the District Court’s prior custody decree could only be modified if it found that: (1) a change in the child’s or his custodian’s circumstances had occurred since the prior decree; (2) modification is necessary to serve the best interests of the child; and (3) the custodial parent willfully and consistently frustrated the noncustodial parent’s visitation rights; or the custodial parent intended to change residence to another state.
As pointed out by the majority, if the court finds that the custodial parent willfully and consistently attempted to frustrate the other parent’s visitation right, then there is a presumption that that parent is not acting in the child’s best interest under § 40-4-219(3), MCA.
I believe the District Court was clearly erroneous when it found that James “consistently” attempted to frustrate Bernice’s visitation rights.
James was awarded primary custody of the children on December 15, 1989. The District Court’s hearing on Bernice’s motion to modify custody was held on February 8,1991, some 14 months later. During that period, Bernice complained of three incidents where the parties had disagreements about visitation:
1. During Christmas of 1989 a dispute arose over visitation which was resolved when Bernice was allowed to have the children on Christmas Eve.
2. During Christmas of 1990, another dispute arose which was resolved when Bernice was allowed to have the children on December 24, 26, and 28. The evidence was that Bernice worked during the *35 Christmas holiday that year and did not have time available for additional visitation.
3. A misunderstanding occurred regarding visitation during the Fourth of July holiday in 1989. Bernice was supposed to have the children. James misunderstood and scheduled a vacation with the children. After some discussion, Bernice exchanged visitation during that period for visitation later on in the summer.
The above three incidents are the only examples offered by Bernice where the parties had disagreements over visitation. The other examples relied upon by the court were James’ failure to notify Bernice of one of the children’s tonsillectomy, failure to communicate regarding the children’s progress in school, and the fact that James had an unlisted telephone number for a period of time. However, none of these additional examples constituted willful attempts to frustrate visitation, and the original three examples hardly amount to consistent frustration of Bernice’s visitation rights.
Without a finding that James willfully and consistently frustrated Bernice’s visitation rights, there was no substantial evidence to support the District Court’s finding that the children’s best interests would be served by modifying the prior custody arrangement.
This Court recently explained the application of the “clearly erroneous” test in the context of reviewing the findings of a trial court sitting without a jury:
We adopt the following three-part test to determine if a finding is clearly erroneous. First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of evidence. Western Cottonoil Co. v. Hodges (C.A. 5th 1954), 218 F.2d 158; Narragansett Improvement Company v. United States (C.A. 1st 1961), 290 F.2d 577. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that ‘[A] finding is “clearly erroneous” when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed.’ U[nited] S[tates] v. U.S. Gypsum Co. (1948), 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746.
Interstate Production Credit Ass’n. v. DeSaye (Mont. 1991), [250 Mont. 320,] 820 P.2d 1285, 1987, 48 St.Rep. 986, 987.
According to the above standard, I conclude that the District Court’s finding that the children’s best interests were served by *36 terminating joint custody and awarding sole custody of the parties’ children was clearly erroneous. I would, therefore, reverse the judgment of the District Court, reinstate joint custody, and return primary custody of the children to James with liberal visitation rights granted to Bernice.